SKIDMORE ET AL. *v.* SWIFT & CO.

No. 12. Argued October 13, 1944.—Decided December 4, 1944.

*Mr. R. Curtis McBroom,* with whom *Mr. Mark McGee* was on the brief, for petitioners.

*Mr. Beverley V. Thompson,* with whom *Mr. Wm. N. Strack* was on the brief, for respondent.

*Solicitor General Fahy, Mr. Douglas B. Maggs,* and *Miss Bessie Margolin* filed a brief on behalf of the Administrator of the Wage and Hour Division, U. S. Department of Labor, as *amicus curiae,* urging reversal.

MR. JUSTICE JACKSON delivered the opinion of the Court.

Seven employees of the Swift and Company packing plant at Fort Worth, Texas, brought an action under the Fair Labor Standards Act to recover overtime, liquidated damages, and attorneys' fees, totalling approximately $77,000. The District Court rendered judgment denying this claim wholly, 53 F. Supp. 1020, and the Circuit Court of Appeals for the Fifth Circuit affirmed. 136 F. 2d 112.

It is not denied that the daytime employment of these persons was working time within the Act. Two were engaged in general fire-hall duties and maintenance of fire-fighting equipment of the Swift plant. The others operated elevators or acted as relief men in fire duties. They worked from 7:00 a. m. to 3:30 p. m., with a half-hour lunch period, five days a week. They were paid weekly salaries.

Under their oral agreement of employment, however, petitioners undertook to stay in the fire hall on the Company premises, or within hailing distance, three and a half to four nights a week. This involved no task except to answer alarms, either because of fire or because the sprinkler was set off for some other reason. No fires occurred during the period in issue, the alarms were rare, and the time required for their answer rarely exceeded an hour. For each alarm answered the employees were

paid in addition to their fixed compensation an agreed amount, fifty cents at first, and later sixty-four cents. The Company provided a brick fire hall equipped with steam heat and air-conditioned rooms. It provided sleeping quarters, a pool table, a domino table, and a radio. The men used their time in sleep or amusement as they saw fit, except that they were required to stay in or close by the fire hall and be ready to respond to alarms. It is stipulated that "they agreed to remain in the fire hall and stay in it or within hailing distance, subject to call, in event of fire or other casualty, but were not required to perform any specific tasks during these periods of time, except in answering alarms." The trial court found the evidentiary facts as stipulated; it made no findings of fact as such as to whether under the arrangement of the parties and the circumstances of this case, which in some respects differ from those of the *Armour* case (*ante,* p. 126), the fire-hall duty or any part thereof constituted working time. It said, however, as a "conclusion of law" that "the time plaintiffs spent in the fire hall subject to call to answer fire alarms does not constitute hours worked, for which overtime compensation is due them under the Fair Labor Standards Act, as interpreted by the Administrator and the Courts," and in its opinion observed, "of course we know pursuing such pleasurable occupations or performing such personal chores, does not constitute work." The Circuit Court of Appeals affirmed.

For reasons set forth in the *Armour* case decided herewith we hold that no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time. We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial

court. *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, 572. This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself. Living quarters may in some situations be furnished as a facility of the task and in another as a part of its compensation. The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was.

We do not minimize the difficulty of such an inquiry where the arrangements of the parties have not contemplated the problem posed by the statute. But it does not differ in nature or in the standards to guide judgment from that which frequently confronts courts where they must find retrospectively the effect of contracts as to matters which the parties failed to anticipate or explicitly to provide for.

Congress did not utilize the services of an administrative agency to find facts and to determine in the first instance whether particular cases fall within or without the Act. Instead, it put this responsibility on the courts. *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, 523. But it did create the office of Administrator, impose upon him a variety of duties, endow him with powers to inform himself of conditions in industries and employments subject to the Act, and put on him the duties of bringing injunction actions to restrain violations. Pursuit of his duties has accumulated a considerable experience in the problems of ascertaining working time in employments involving periods of inactivity and a knowledge of the customs

prevailing in reference to their solution. From these he is obliged to reach conclusions as to conduct without the law, so that he should seek injunctions to stop it, and that within the law, so that he has no call to interfere. He has set forth his views of the application of the Act under different circumstances in an interpretative bulletin and in informal rulings. They provide a practical guide to employers and employees as to how the office representing the public interest in its enforcement will seek to apply it. Wage and Hour Division, Interpretative Bulletin No. 13.

The Administrator thinks the problems presented by inactive duty require a flexible solution, rather than the all-in or all-out rules respectively urged by the parties in this case, and his Bulletin endeavors to suggest standards and examples to guide in particular situations. In some occupations, it says, periods of inactivity are not properly counted as working time even though the employee is subject to call. Examples are an operator of a small telephone exchange where the switchboard is in her home and she ordinarily gets several hours of uninterrupted sleep each night; or a pumper of a stripper well or watchman of a lumber camp during the off season, who may be on duty twenty-four hours a day but ordinarily "has a normal night's sleep, has ample time in which to eat his meals, and has a certain amount of time for relaxation and entirely private pursuits." Exclusion of all such hours the Administrator thinks may be justified. In general, the answer depends "upon the degree to which the employee is free to engage in personal activities during periods of idleness when he is subject to call and the number of consecutive hours that the employee is subject to call without being required to perform active work." "Hours worked are not limited to the time spent in active labor but include time given by the employee to the employer. . . ."

The facts of this case do not fall within any of the specific examples given, but the conclusion of the Administrator, as expressed in the brief amicus curiae, is that the general tests which he has suggested point to the exclusion of sleeping and eating time of these employees from the workweek and the inclusion of all other on-call time: although the employees were required to remain on the premises during the entire time, the evidence shows that they were very rarely interrupted in their normal sleeping and eating time, and these are pursuits of a purely private nature which would presumably occupy the employees' time whether they were on duty or not and which apparently could be pursued adequately and comfortably in the required circumstances; the rest of the time is different because there is nothing in the record to suggest that, even though pleasurably spent, it was spent in the ways the men would have chosen had they been free to do so.

There is no statutory provision as to what, if any, deference courts should pay to the Administrator's conclusions. And, while we have given them notice, we have had no occasion to try to prescribe their influence. The rulings of this Administrator are not reached as a result of hearing adversary proceedings in which he finds facts from evidence and reaches conclusions of law from findings of fact. They are not, of course, conclusive, even in the cases with which they directly deal, much less in those to which they apply only by analogy. They do not constitute an interpretation of the Act or a standard for judging factual situations which binds a district court's processes, as an authoritative pronouncement of a higher court might do. But the Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case. They do determine the policy which will guide applications for enforcement

by injunction on behalf of the Government. Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons. The fact that the Administrator's policies and standards are not reached by trial in adversary form does not mean that they are not entitled to respect. This Court has long given considerable and in some cases decisive weight to Treasury Decisions and to interpretative regulations of the Treasury and of other bodies that were not of adversary origin.

We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

The courts in the *Armour* case weighed the evidence in the particular case in the light of the Administrator's rulings and reached a result consistent therewith. The evidence in this case in some respects, such as the understanding as to separate compensation for answering alarms, is different. Each case must stand on its own facts. But in this case, although the District Court referred to the Administrator's Bulletin, its evaluation and inquiry were apparently restricted by its notion that waiting time may not be work, an understanding of the law which we hold to be erroneous. Accordingly, the judgment is reversed and the cause remanded for further proceedings consistent herewith.

*Reversed.*