Sheryl BEASTON, Vincent L. Beaston, et al., Plaintiffs,

v.

SCOTLAND SCHOOL FOR VETERANS' CHILDREN, Pa. Dept. of Education, Commonwealth of Pennsylvania, Defendants.

Civ. A. No. 87-0394.

United States District Court, M.D. Pennsylvania.

Aug. 25, 1988.

John F. Goryl, Carlisle, Pa., Hubert X. Gilroy, Broujos, Gilroy and Houston P.C., Carlisle, Pa., for plaintiffs.

Michael B. Sutton, Dist. Atty. Gen., Harrisburg, Pa., for Com. of Pa.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction*

This action came for trial before the court on July 12, 1988. The issues have been tried and a decision will now be rendered for the defendants. This memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

*Background*

The plaintiffs are former or present houseparents or houseparent supervisors[1] at the Scotland School for Veterans' Children located in Franklin County, Pennsylvania. Scotland School is a residential school oper-

---

1. As used in this memorandum, the term "houseparent" will be used to refer also to housepar- ent supervisors, unless otherwise indicated.

ated by the Pennsylvania Department of Education. Originally founded to educate orphans and half-orphans (one parent still living) of civil war veterans, the school now accepts orphans and half-orphans of veterans of other wars as well as the non-orphan children of other veterans, who are often indigent. On average, 360 to 380 students in first through twelfth grades attend Scotland School and reside on campus. Most of the male senior high school students are housed in a single dormitory building. The remaining children generally are grouped by grade level and sex and are housed in 26 cottages, each holding up to 13 students.

The plaintiffs and other houseparents care for the children while they are in the cottages. Each houseparent supervisor oversees the operation of six to nine cottages and serves as houseparent in his or her own cottage. Currently, and since November, 1985, houseparents work a seven-day shift normally starting at 3:00 p.m. on Friday and ending at 8:30 a.m. on the following Friday. They then normally do not return to work until 3:00 p.m. one week later. The normal working schedule is as follows:

|  |  | Work Hours | Paid Breaks |
|---|---|---|---|
| **Friday:** | 3:00 p.m.—11:00 p.m.—work | 8.00 hrs. | |
| | Two paid breaks not taken between 3–11 p.m. | | .50 hrs. |
| | 11:00 p.m.—7:00 a.m.—sleep, not paid | | |
| | 7:00 a.m.—8:30 a.m.—work | 1.50 hrs. | |
| | | 9.50 hrs. | .50 hrs. |
| **Saturday:** | 8:30 a.m.—11:00 p.m.—work (14.5 hrs.) | | |
| | Less two ½ hr. duty free periods | 13.50 hrs. | |
| | One paid break not taken between lunch and dinner | | .25 hrs. |
| | One paid break not taken between dinner and 11 p.m. | | .25 hrs. |
| | 11:00 p.m.—7:00 a.m.—sleep, not paid | | |
| | 7:00 a.m.—8:30 a.m.—work | 1.50 hrs. | |
| | | 15.00 hrs. | .50 hrs. |
| **Sunday:** | 8:30 a.m.—10:00 p.m.—work (13.5 hrs.) | | |
| | Less two ½ hr. duty free periods | 12.50 hrs. | |
| | One paid break not taken between lunch and dinner | | .25 hrs. |
| | One paid break not taken between dinner and 10 p.m. | | .25 hrs. |
| | 10:00 p.m.—5:30 a.m.—sleep, not paid | | |
| | 5:30 a.m.—8:30 a.m.—work | 3.00 hrs. | |
| | | 15.50 hrs. | .50 hrs. |

Total Hours: 40.00 + 1.50

| | | Work Hours | Paid Breaks |
|---|---|---|---|
| **Monday through Thursday:** | 3:00 p.m.—10:00 p.m.—work | 7.00 hrs. | |
| | Two paid breaks not taken between 3–10:00 p.m. | | .50 hrs. |
| | 10:00 p.m.—5:30 a.m.—sleep, not paid | | |
| | 5:30 a.m.—8:30 a.m.—work | 3.00 hrs. | |
| | | 10.00 hrs. | .50 hrs. |

Total Hours: 40.00 + 2.00

On Monday through Thursday from 8:30 a.m. until 3:00 p.m. when the children are in classes, the houseparents have no work-related responsibilities and are free to either remain on campus or leave. They are not compensated for those hours, which are not in dispute in this lawsuit. Nor are the houseparents routinely paid for the hours designated for sleep, during which they are required to remain in their respective cottages. They normally retire to their private bedrooms to sleep, but are free to do whatever they wish so long as they remain in their cottages. During sleep time the

houseparents' only responsibility is to investigate and deal with matters of which they become aware, such as illness, homesickness, runaways and disciplinary problems. However, there is no requirement that they maintain a vigilant watch for potential or actual problems. The school takes no action against a houseparent who does not become aware of problems or who does not hear noises in the night.

Should the sleeping period be interrupted, and the houseparent be called to duty, the interruption may be counted as hours worked. Each houseparent is responsible for recording this duty time on his or her time card and is then paid for that period.[2] Sleep time work is generally compensated at one and one-half times the houseparent's usual rate of pay because it is normally overtime. The plaintiffs rarely recorded claims on their time cards for sleep time calls to duty, but when they did, the school has approved them.

The plaintiffs filed this lawsuit claiming that they are entitled to overtime compensation for the entire sleep period, whether or not they were actually engaged in work. They claim that the defendants' failure to pay them violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

*Discussion*

Section 6 of the FLSA, 29 U.S.C. § 206, requires that employees not specifically exempted be paid a minimum wage. Section 7, 29 U.S.C. § 207, provides that employees working more than forty hours per week must receive at least one and one-half times their regular hourly wage for overtime hours. At issue here is whether the sleep time hours constitute work time and are thus compensable under sections 6 and 7 of the FLSA.

█ It is well settled that under appropriate circumstances sleep time constitutes work time. The work week ordinarily includes "all the time during which an employee is necessarily required to be on the

employer's premises, on duty or at a prescribed work place." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515, 1525 (1946). In this case it is clear that the plaintiffs are required to remain on campus during the period designated for sleep. However, other factors must be considered. The court agrees with the plaintiffs that the following factors, among others, are relevant: 1) the parties' agreement; 2) whether the employees are required to remain on the employer's premises; 3) the degree to which the employees are permitted to engage in their own activities; and 4) whether the employee's availability is predominantly for the employer's or the employee's benefit. See cases collected at Annotation, *Call or Waiting Time as Working Time Within the Minimum Wage and Overtime Provisions of the Fair Labor Standards Act (29 U.S.C. §§ 206, 107)*, 3 A.L.R. Fed. 675 (1970).

On the question of whether "waiting time" qualified as "working time," the Supreme Court has written:

[N]o principle of law found either in the [FLSA] or in Court decisions precludes waiting time from also being working time. We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court.... This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cov-

---

2. The houseparents are compensated for fifteen minutes of work for every fraction of a quarter hour actually spent working. For example, if they work for five minutes, they may claim fifteen minutes, if they work for sixteen minutes, they may claim thirty minutes, etc. If less than five hours is available for sleep per night due to calls to duty, the houseparent may claim the entire sleep period as time worked.

er both waiting and task, or only performance of the task itself. Living quarters may in some situations be furnished as a facility of the task and in another as a part of its compensation. The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was. *Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124, 127–28 (1944) (citations omitted).

Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

*Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118, 124 (1944).

In examining all the circumstances of this case, the court has reviewed the interpretation of the FLSA by the Administrator of the Wage and Hour Division of the United States Department of Labor. Although the Administrator's interpretation of the Act is not binding, the court may properly look to it for guidance. The Department's policy concerning sleep time is generally explained in its Interpretative Bulletin on Hours Worked, 29 C.F.R. Part 785 (1987).[3] According to the Administrator, as a general rule, sleep time is compensable unless it falls within either of two exceptions. First, subject to certain conditions, and by agreement, sleep time of up to eight hours need not be considered as working time if the employee is on duty for 24 hours or more. Second, where an employee resides on his employer's premises permanently or for extended periods of time, sleep time may be excluded by agreement, again subject to certain conditions.

The court finds those conclusions, so far as they are relevant to this case,[4] to be

---

3. The relevant sections of Part 785 provide as follows:

§ 785.21 **Less than 24–hour duty.**

An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy. A telephone operator, for example, who is required to be on duty for specified hours is working even though she is permitted to sleep when not busy answering calls. It makes no difference that she is furnished facilities for sleeping. Her time is given to her employer. She is required to be on duty and the time is worktime.

§ 785.22 **Duty of 24 hours or more.**

(a) *General.* Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute the hours worked.

(b) *Interruptions of sleep.* If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

§ 785.23 **Employees residing on employer's premises or working at home.**

An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted....

4. We need not express an opinion as to the propriety of the eight hour restriction because the sleep time at issue in this case is less than

logical and practical interpretations of the Act and consistent with the Supreme Court's mandates in *Skidmore* and *Armour* that all the circumstances of the case be examined. However, the court parts company with the Administrator with respect to his conclusion in 29 C.F.R. § 785.21 that no sleep time may be deducted from the employee's hours of work if the employee is on duty for less than 24 hours, regardless of the other surrounding circumstances. There is no apparent logical reason for that arbitrary interpretation of the FLSA, and it flies in the face of the *Skidmore* and *Armour* admonition that all of the circumstances of the case be examined. To adopt section 785.21 as a rule of law would require a court to ignore an otherwise valid agreement between an employer and employee concerning compensable sleep time as well as all other relevant factors. The 24 hour rule may well serve as a guideline for judging the reasonableness of an arrangement, but it should not be the sole, or even the most important, consideration. Rather than blindly follow the interpretative regulations, the court will examine all of the circumstances of this case, as directed by the Supreme Court.

A. *Working and Sleeping Conditions*

The evidence shows that except for the period beginning at 3:00 p.m. on Fridays until 8:30 a.m. on Mondays, the plaintiffs are not required to remain on the Scotland School premises for 24 hours or more. They are relieved of all duties and are free to leave from 8:30 a.m. until 3:00 p.m. on Mondays through Thursdays. The evidence also shows that they do not permanently reside there. They maintain residences elsewhere and raise families off campus. However, that does not preclude a finding that they reside at the school for extended periods of time.

During the seven day work shift the plaintiffs spend their on-duty time and sleep time in their respective cottages.

Each cottage is furnished and has a living room, dining area, kitchen, bathroom and playroom or office on the first floor, and the children's bedrooms, houseparent's bedroom and bathroom, and an additional bathroom on the second floor. The plaintiffs sleep in their private bedrooms and utilize private bathrooms. They are authorized to furnish their rooms as they wish, may have personal telephones installed and may bring in articles of personal property and food. They have access to the cottage's kitchen which is equipped with the normal assortment of appliances. They also may use the cottage living room to watch television or relax in other manners. The houseparents may, if they wish, remain on campus continuously during their duty week. They may receive visitors when the children are in school and for one-half hour on Saturdays and Sundays.

The plaintiffs contend that the sleeping facilities provided by the school are inadequate in that they are unable to obtain normal rest during the uncompensated periods of sleeping time. Complaints at trial concerned noises from students, the heating system, passing trains and security guards. Depending upon the cottage, its location on the campus and the sleeping habits of the individual houseparents, the intrusiveness of the disturbances varied. Some houseparents didn't hear noises. Of the plaintiffs who were disturbed by noises, some testified they would remain awake for long periods while others went back to sleep immediately.

The variations in testimony reveal the personal factors involved in an inquiry into the adequacy of sleeping facilities. There is no doubt that the houseparents' sleep is temporarily disturbed on occasion. However, upon consideration of all of the evidence, the court is unable to conclude that the plaintiffs are furnished inadequate sleeping facilities or that they are unable to get normal rest. The noises they complain of are not unlike those in many homes in many communities. The court puts substantial weight on the fact that the Scot-

---

eight hours. We do not now decide whether in a given case sleep time of more than eight hours

may be excluded from payment.

land School Administration has received few complaints about nighttime interruptions. Furthermore, when alerted about noise, the school attempts to correct the problem.

The court concludes that the Scotland School provides adequate sleeping facilities for the houseparents. They are provided an opportunity for and usually obtain at least five hours of uninterrupted sleep per night. Since they spend seven consecutive days and nights on campus, they reside there for an extended period of time.

### B. *Benefits to the Plaintiffs*

The defendants contend that the plaintiffs receive a benefit by sleeping at the school since they receive free lodging and meals during working hours. The defendants argue that the plaintiffs are able to avoid driving home at 10:00 p.m. and returning at 5:30 a.m., thus saving time. Finally the defendants claim that by remaining in the cottages during sleep time hours, the houseparents are readily available to earn overtime pay. The court does not doubt that the houseparents receive such incidental benefits by virtue of their employment. It is clear, however, that they are not sleeping at the school primarily in order to receive those perquisites. They remain on campus, not for their own benefit, but at the behest of their employer and for the employer's benefit.

### C. *Compensation Agreements*

■ When time spent on an employer's premises is not clearly spent working, employers and employees may reach an agreement concerning what portion of that time is to be classified as "hours worked" for compensation purposes. *See Skidmore.* Employee sleep time on the employer's premises constitutes a time period subject to such agreement.

■ The houseparents' compensation and benefits were covered under a Master Agreement for the period July 1, 1985, to June 30, 1988, between the Commonwealth of Pennsylvania and Council 13 of the American Federation of State, County and Municipal Employees (AFSCME). The hou-

separent supervisors' compensation and benefits are covered by an analogous agreement known as a Master Memorandum. AFSCME is the exclusive representative of the houseparents and houseparent supervisors for collective bargaining purposes. At the time of trial, new agreements effective July 1, 1988, had been negotiated but not yet reduced to writing. The provisions relevant to this proceeding remain unchanged in the new agreements.

The Master Agreement provides:

### ARTICLE 35 SPECIAL AND PART–TIME EMPLOYES

Section 1. Present practices relating to employes who are part-time, irregularly scheduled, or specially classified shall remain in effect. Specially classified employes shall include, but not be limited to the following: Housemothers, Houseparents (except at Youth Development Centers), Foster Grandparents, Homemakers, State Work Program Trainees, and part-time custodial personnel.

The Master Memorandum provides:

### RECOMMENDATION NO. 35 SPECIAL AND PART–TIME EMPLOYES

Section 1. Present practices relating to employes who are part-time, irregularly scheduled, or specially classified shall remain in effect.

When the agreements were negotiated in 1985, and again in 1988, the "present practice" was (and still is) to pay houseparents and houseparent supervisors only for those sleep time hours during which they were called to duty and actually worked. The court notes that the 1985 agreements became effective over four months after the Supreme Court decided that the FLSA applied to the states in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The court is aware of various communications between the parties concerning the application of *Garcia* and, subsequently, of the FLSA amendments of 1985. Regardless of the substance of those communications, the master agreements were

not altered. Nor were they changed during negotiations in 1988 after this lawsuit was filed.

Accordingly, the court finds express agreements that houseparents and houseparent supervisors were to be paid only for those sleep time hours actually worked and that sleep time hours are not "hours worked." That conclusion is supported by the plaintiffs' unanimous testimony that when they began working at the Scotland School, each had a clear understanding that they would not be paid for sleeping. Thus by the acceptance of and continuation of employment the plaintiffs impliedly agreed that sleep time was not work time.

*Conclusion*

Scotland School acted in good faith conformity with and in reliance upon the written regulations of the Administrator of the Wage and Hour Division. Furthermore, the actions of the Scotland School conformed with the FLSA in that the plaintiffs agreed that sleep hours were not compensable hours worked. Accordingly, judgment will be entered in favor of the defendants.