**Daniel LEAHY, James Martinez, Michael D. Moore, et al., Plaintiffs–Appellants,**

v.

**CITY OF CHICAGO, ILLINOIS, Defendant–Appellee.**

**Nos. 95–2015 to 95–2018.**

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1996.

Decided Sept. 11, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 7, 1996.*

---

* The Honorable Joel M. Flaum did not participate in the consideration of the petition for rehearing en banc.

Weinstein & Spiro, Chicago, IL, for Daniel Leahy, James Martinez, Michael D. Moore, John Kaput, Robert McCann, William Kent, Alan Osborn, Terrence Clark, John Poulson, Roy Whitmore, Michael Brennan, Carolyn C. Burauer, James Scallon, Diane Kozlowski, Michael Nunez, Alfred Schultz, Stanley Sanders, Anne M. Cleary, David Koziol, Daniel Walczak in No.95–2015.

Kelly R. Welsh, Office of the Corporation Counsel, Chicago, IL, Mary L. Smith, Lawrence Rosenthal, Mardell Nereim (argued), Benna R. Solomon, Jennifer Naber, Kathryn Zeledon Nelson, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, for City of Chicago in No. 95–2015.

Susan P. Malone, Chicago, IL, Perry M. Berke (argued), Burton I. Weinstein, Baskin, Server, Berke, Weinstein & Spiro, Chicago, IL, for Julie Alexander, Carmel G. Abbate, Bozeman Anderson, Luis Arroyo, Lonnie E. Alston, Richard Baranski, James B. Bauer, Richard Bednarek, Michael Berti, Jeremiah Barry, William A. Berth, Mark Borski, James M. Brady, Demerise Beilecki, Beverly M. Birch, George Brown, John Brusich, Dennis Brucato, Catherine Burkhart, Joseph Burkhart, Nadine Burke, Frances Camacho, Glenn Carlson, Patricia Carrosca, Brian Cheevers in No. 95–2016.

Kelly R. Welsh, Office of the Corporation Counsel, Chicago, IL, Lawrence Rosenthal, Mardell Nereim (argued), Benna R. Solomon, Jennifer Naber, Kathryn Zeledon Nelson, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, for City of Chicago in No. 95–2016.

Susan P. Malone, Chicago, IL, Perry M. Berke (argued), Burton I. Weinstein, John R. Malkinson Baskin, Server, Berke, Weinstein & Spiro, Chicago, IL, for Juan Accosta, Jesse R. Acosta, Paul Abram, Erwin Acox, Christopher Adams, Alan Adamski, Arlene Adamson, Kathleen Aguinaga, Arthur Alaniz, Steward Alderson, Melvin Alexander, John R. Allanson, Lawrence Alonzo, Dennis Altobelle, Rosendo Alvarez, Luis Alverio, Luis Alvizu, Dan Anczer, Mark Andersen, Derek Anderson, John Anderson, Robert Anderson, Cynthia Anderson–Davis, Garth Angel, John Antos in No. 95–2017.

Susan P. Malone, Chicago, IL, Perry M. Berke (argued), Baskin, Server, Berke,

Kelly R. Welsh, Office of the Corporation Counsel, Chicago, IL, Lawrence Rosenthal, Benna R. Solomon, Mardell Nereim (argued), Jennifer Naber, Kathryn Zeledon Nelson, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, for City of Chicago in No. 95–2017.

Susan P. Malone, Chicago, IL, Perry M. Berke (argued), Baskin, Server, Berke, Weinstein & Spiro, Chicago, IL, for Mark Akana, Carol Love–Adams, Helen Adams, Joseph Adams, III, Jerome L. Anderson, Alberto Albarran, John S. Allan, Wilbert Allen, Fernando Alonzo, Ann M. Alvear, Dino J. Amato, Katherine Ambrose, Joe Anderson, Michael D. Andruzzi, Robert P. Antol, Ross J. Anthos, Thomas W. Argenbright, Travis B. Armstead, Anita R. Ashton, Mary A. Bakutis, Robert L. Banksdale, Robert L. Barberio, Patrick W. Barker, Barry D. Baston, Ronald Beach in No. 95–2018.

Lawrence Rosenthal, Mardell, Nereim (argued), Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago in No. 95–2018.

Before BAUER, CUDAHY, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Chicago police officers sued the City of Chicago, alleging violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"). The officers claimed various restrictions on their meal periods rendered those periods compensable work time under the FLSA. The district court initially dismissed the case, and we reversed and remanded for further development of the facts regarding the frequency and duration of interruptions during the meal periods. On remand, the district court granted the City's motion for summary judgment, finding that the officers' meal periods were not compensable work time under the FLSA. This time around we affirm, but on different grounds than the district court.[1]

■ Section 7(a) of the FLSA requires employers to pay overtime to employees who work more than 40 hours in a workweek. 29 U.S.C. § 207(a). However, the FLSA allows public agencies engaged in law enforcement activities to calculate overtime for law enforcement personnel based on a 28 day work period rather than the standard seven day period. 29 U.S.C. § 207(k). Under section 7(k), the departments must pay overtime only when employees have "tours of duty which in the aggregate exceed" 171 hours in a 28 day period. 29 U.S.C. § 207(k)(1); 29 C.F.R. §§ 553.201(a), 553.230. The Chicago Police Department operates under section 7(k)'s exemption. Its officers work shifts of eight-and-one-half hours, which include one unpaid half-hour meal period. The crux of this lawsuit is whether the officers' half-hour meal period is work time which should count towards the 171 hour limit beyond which they must receive overtime pay.[2] William Leahy and

---

1. This case represents four consolidated appeals: *Leahy v. City of Chicago* (No. 95–2015), *Alexander v. City of Chicago* (No. 95–2016), *Accosta v. City of Chicago* (No. 95–2017), and *Arkana v. City of Chicago* (No. 95–2018).

2. Although FLSA does not define "work," two regulations set out the circumstances in which meal periods may be excluded from the calculation of hours worked. First, 29 C.F.R. § 785.19(a) provides:

(a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals.... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.
29 C.F.R. § 785.19(a). 29 C.F.R. § 553.223(b), which applies to agencies that elect to use the § 7(k) exception, permits the exclusion of meal periods from the calculation of hours worked on tours of duty of 24 hours or less

provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.
29 C.F.R. § 553.223(b).
With these regulations in mind, we and other circuit courts have adopted the "predominant

nineteen other current and former Chicago police officers initiated this action in state court in November 1989, claiming that the restrictions on their meal periods made those periods compensable work time under the FLSA. Those restrictions include: officers must receive permission from a dispatcher to take a meal period; officers must receive permission from a supervisor to leave their assigned districts during meal periods; officers must remain in uniform and comply with various rules governing conduct while in uniform; no more than two officers may congregate during a meal period without prior permission; officers in two-person units must take their meals at the same time; officers must be available to end their meals upon request; officers must respond to emergencies and requests for assistance by the public; and officers must be available by radio to the dispatcher.

■ The City moved for summary judgment on two grounds. First, the City contended that the Portal–to–Portal Act, 29 U.S.C. § 259, barred the suit because the police department had based its practice of excluding the half-hour meal periods from compensable work time on a good faith reliance on a Department of Labor Letter Ruling. Second, the City asserted that the collective bargaining agreement between the City and the police officers declared that the officers' meal periods are not compensable work time, and therefore served as a complete defense to the lawsuit. The district court rejected both grounds upon which the City based its motion, and instead granted summary judgment on the merits, finding that the restrictions on the officers and the interruptions during their meal periods did not make the meal periods compensable time under the FLSA. We review the district court's summary judgment determination *de novo*.

The plaintiffs argue that the district court improperly granted summary judgment on the merits because discovery was not complete on the issue of the frequency and duration of interruptions during officers' meal periods. The City concedes this, and therefore does not defend the district court's reasoning. Instead, the City justifies the grant of summary judgment on a ground the district court rejected—that the collective bargaining agreement between the City and the police officers satisfies the FLSA by providing that officers will receive overtime pay if they work a full eight hours and also work during their meal period. Both parties acknowledge that discovery was complete as to this issue. We agree that the collective bargaining agreement protects the plaintiffs' rights to overtime compensation under the FLSA, and affirm the grant of summary judgment on that basis. *Flynn v. Sandahl,* 58 F.3d 283, 289 (7th Cir.1995).

*Collective Bargaining Agreement*

The Fraternal Order of Police ("FOP") has acted as the collective bargaining representative of most Chicago police officers since 1979. During that time, the FOP and the City have entered into several collective bargaining agreements providing for fixed salaries for officers, as well as overtime pay at the rate of time-and-one-half for all hours worked in excess of eight hours in a day or 40 hours in a week. A memorandum of understanding attached to all of the collective bargaining agreements sets out certain benefits, including a half-hour meal period during each tour of duty. The collective bargaining agreements establish a grievance procedure for disputes about the interpretation or application of the agreement, and provide for arbitration before a neutral party for those disputes not resolved during the grievance

benefit" test for determining whether meal periods constitute compensable work time under the FLSA. *See, e.g., Alexander,* 994 F.2d at 337; *Avery v. City of Talladega,* 24 F.3d 1337, 1345 (11th Cir.1994); *Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531, 534 (8th Cir.1993); *Lamon v. City of Shawnee,* 972 F.2d 1145, 1155–57 (10th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993). An employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the

employer. *Alexander,* 994 F.2d at 337. The FLSA requires compensation for meal periods during which a police officer cannot comfortably and adequately spend the mealtime because the officer's time or attention is devoted primarily to official responsibilities. *Lamon,* 972 F.2d at 1155–56. If during meal periods a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, then the officer is completely relieved from duty and is not entitled to compensation under the FLSA. *Id.* at 1157.

procedures. It is undisputed that the FOP never has filed a grievance asserting that the uncompensated half-hour meal period constitutes a breach of the collective bargaining agreement.

■ Under the FLSA, employers and employees may make "reasonable provisions of contract [to guide] the computation of work hours where precisely accurate computation is difficult or impossible" *See Tennessee Coal, Iron & Railway Co. v. Muscoda Local No. 123,* 321 U.S. 590, 603, 64 S.Ct. 698, 705, 88 L.Ed. 949 (1944). *See also Skidmore v. Swift & Co.,* 323 U.S. 134, 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944); *Bowers v. Remington Rand, Inc.,* 159 F.2d 114, 116 (7th Cir.1946), *cert. denied,* 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288 (1947). This means that employers and employees may resolve whether certain activity is "work" through a collective bargaining agreement, as long as the agreement comports with the FLSA. *See Beaston v. Scotland Sch. for Veterans' Children,* 693 F.Supp. 234, 239 (M.D.Pa.1988), *aff'd,* 869 F.2d 587 (3d Cir.1989). Here, if the collective bargaining agreement's guarantee of overtime compensation for time worked in excess of eight hours in an eight-and-one-half hour tour of duty protects Chicago police officers' FLSA rights to overtime compensation, then the agreement is a defense to liability under the FLSA and the plaintiffs' suit cannot succeed. This makes perfect sense in situations where it is difficult to define precisely what constitutes working time.

Here, the collective bargaining agreement provides that "[a]ll time in excess of the hours worked in a normal workday (8 hours) and the normal workweek (40 hours) shall be compensated" at the rate of time-and-one-half. If an officer works more than eight hours, the officer is entitled to overtime pay. The parties' agreement therefore assumes that generally an officer is not working during a meal period, but provides for appropriate compensation when an officer actually does work during the meal. In fact, as the City argues, the collective bargaining agreement actually is *more* generous than the

FLSA, which provides for overtime compensation only when an officer works more than 171 hours in a 28 day period.

■ The district court found that the collective bargaining agreement did not specifically address whether meal periods were compensable work time, and therefore the agreement by itself could not support summary judgment in favor of the City. In our previous opinion, which was based on a less developed record than we have here, we suggested in a footnote that the collective bargaining agreement was only one factor to consider in determining whether meal periods are compensable work time. *Alexander v. City of Chicago,* 994 F.2d 333, 339 n. 11 (7th Cir.1993). However, upon further review, we conclude that the collective bargaining agreement can and does outright preclude the plaintiffs' claim. The agreement clearly states that an officer is entitled to overtime rates for hours worked in excess of eight hours per day. If an officer works more than eight hours in a day as a result of working during a meal period, the City will pay overtime rates for the excess work time. The FLSA requires no more. *Alexander,* 994 F.2d at 345 (Bauer, C.J., dissenting).

Indeed, the individual inquiry facilitated by the grievance process is the most efficient way to determine whether an officer's meal period should be compensable work time. The situation here—a police department of some 12,000 officers in different districts with different shift schedules and different exigencies arising each day that might affect officers' meal periods—is not conducive to a one-shot solution. The officers want just such a solution: because some officers on some days miss all or part of their meal periods, the plaintiffs want all meal periods to be compensable work time. That would brook a result we cannot sanction, where officers might be paid for doing nothing more than eating during their meal periods. Instead, we conclude that the collective bargaining provision guaranteeing overtime pay to officers who work more than eight hours in a day compensates officers if they work during their meal periods, and therefore fully protects the officers' FLSA rights.[3]

---

**3.** Some of the plaintiffs are sergeants, who are not covered by the collective bargaining agreement because of their rank. Sergeants receive one-half hour of overtime compensation in addi-

## CONCLUSION

For the foregoing reasons, we affirm the district court's order granting the City's motion for summary judgment.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting:

Judge Bauer, for the new majority, has done a skillful job of reviving and restating a substantial part of his dissent in the earlier appeal of this case, *Alexander v. City of Chicago*, 994 F.2d 333, 342 (7th Cir.1993). In *Alexander*, we (or rather a fractionally different panel) refused to approve a judgment on the pleadings for the City on an undeveloped record like the one that is now before us. In that phase of the case, I wrote for the old majority and Judge Bauer dissented. The case and the issue to be resolved have not changed in any respect, but the panel has changed. And this is decisive. As a result the law seems to have changed without so much as a nod of recognition by the new majority to the law of the case doctrine, which has been flagrantly violated here. This in itself is more than enough to compel rejection of the (new) majority opinion.

The majority says here that the collective bargaining agreement can be a complete defense to a Fair Labor Standards Act claim when the agreement supplies a dispositive definition of "work."[1] The majority opinion in *Alexander* specifically rejected this approach:

> Although a fact finder might consider [a collective bargaining agreement] as one among many factors in determining whether the officers were completely relieved of duty, it certainly does not outright preclude the officers' claim.

tion to eight hours of regular pay for each eight-and-one-half-hour tour of duty that they work. The tour of duty includes one half-hour meal period. Sergeants therefore work an eight-and-one-half hour tour of duty and get paid for eight-and-one-half hours. The FLSA requires no more than this.

*Id.* at 339 n. 11. The present opinion is thus in total contradiction of *Alexander*, but comports closely with the analysis of Judge Bauer's dissent in that earlier case. In his *Alexander* dissent, Judge Bauer asserted:

> Here, the City is bound by the collective bargaining agreement which requires that the Officers receive overtime rates when they work during their meal periods. The Officers do not allege that the City has breached the collective bargaining agreement and, absent such an allegation, I assume that the City fully complies with its terms. Consequently the City pays the Officers if they work during their meal periods and does not pay them if they do not work during their meal periods. FLSA requires no more.

*Id.* at 345. The adoption of this analysis by the present majority obviously disregards the law of the case.

In order to deal at least cosmetically with this unseemly state of affairs, the majority opinion states that our previous opinion "was based on a less developed record than we have here" and concludes that "upon further review, we conclude that the collective bargaining agreement can and does outright preclude the plaintiffs' claim." Maj. Op. at 232. Assuming that the majority recognizes the "predominant benefit" test relied upon in *Alexander*, the conclusion that the collective bargaining agreement alone can outright preclude the plaintiffs' claim must imply that the required factual inquiry has been conducted and all of the facts other than the collective bargaining agreement have been shown to be inconsequential. This suggestion defies reality. The undeveloped—in fact, fragmentary—record now before us is in all relevant respects no different than the undeveloped record that confronted the *Alexander* panel.[2] The record has not changed; only the composition of the panel has changed. All sides agree that discovery in this case is not complete. It is for this reason that the City

1. Here, of course, the agreement supplies no definition of "work."

2. The court in *Alexander* held that a collective bargaining agreement could be considered as *"one among many factors"* under the predominant benefit test. *Alexander*, 990 F.2d at 340 n. 11 (emphasis added). Nothing has occurred to change this conclusion. As the answer to the

concedes that Judge Marovich's summary judgment on the merits cannot be affirmed for the reasons on which he relied. If discovery is not over, this court can hardly conclude that the collective bargaining agreement provides dispositive facts. *Alexander* clearly held that the predominant benefit test could be applied only after the complete development of the relevant evidence.[3]

The majority's "further review" of the unchanged collective bargaining agreement leads it to suggest (contrary to *Alexander*) that the agreement is such an important factor that it makes all others pale into insignificance. The majority supports this suggestion by citing *Tennessee Coal, Iron & Railway Co. v. Muscoda Local No. 123,* 321 U.S. 590, 603, 64 S.Ct. 698, 705–06, 88 L.Ed. 949 (1944), for the proposition that "employers and employees may make 'reasonable provisions of contract [to guide] the computation of work hours where precisely accurate computation is difficult or impossible.' " Maj. Op. at 232.

The majority neglects to point out, however, *Tennessee Coal's* admonition that:

> The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only part of it. Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.

*Id.* at 602–03, 64 S.Ct. at 705. In short, the FLSA establishes statutory rights which may not be contracted away. As the Supreme Court has stated, " . . . congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation agreement." *Barrentine v. Arkansas–Best Freight System, Inc.,* 450

U.S. 728, 740–41, 101 S.Ct. 1437, 1445, 67 L.Ed.2d 641 (1981). Thus, even if the collective bargaining agreement had explicitly defined the officers' meal periods as non-compensable, an FLSA action could be sustained if the meal periods were actually for the predominant benefit of the employer.

Here, of course, the collective bargaining agreement contains no such definition. In the district court, the City moved for summary judgment on the grounds that the collective bargaining agreement declared that the officers' meal periods were not compensable work and therefore served as a complete defense to the lawsuit. Judge Marovich rejected this position, finding that the collective bargaining agreement "fails to include any agreement regarding the meal periods." Dist. Ct. Op. at 11. This finding is obviously correct, and the majority has not suggested anything in the agreement that would put it in doubt. Rather, the majority rests its case on the fact that, "The agreement clearly states that an officer is entitled to overtime rates for hours worked in excess of eight hours per day." Maj. Op. at 232. This virtual truism hardly addresses the question now before us—whether officers' meals involve "work." In fact, the collective bargaining agreement has nothing to say on the issue before us, as the *Alexander* panel held and as Judge Marovich has subsequently found.

The majority opinion would leave the determination of whether the officers' meal periods constitute "work" to case-by-case grievance arbitration. In fact, the majority opinion seems to rest on nothing more substantial than the belief that such arbitration may be a better way to resolve the question than would litigation in federal court. However, there is no abstention doctrine that tells us to abstain in favor of an arbitrator. Nor is there any like doctrine of primary jurisdiction. In fact, the Supreme Court has held that a worker may pursue a remedy under the FLSA even after *losing* a grievance arbitration. *Barrentine,* 450 U.S. at 740, 101 S.Ct. at 1444 ("No exhaustion re-

---

petition for rehearing points out, the parties have created a marginally more complete record by finishing discovery pertaining to the Portal Act defense and to the collective bargaining agreement defense. But the record is still obviously insufficient to eliminate disputes of fact under the predominate benefit test.

3. It is, of course, possible that summary judgment on the merits might be appropriate here after the completion of all discovery.

quirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute.").

The issues that are before us have been successfully litigated by courts in a number of jurisdictions where grievance arbitration might have been an alternative means of resolving the issues. *See, e.g., Lamon v. City of Shawnee,* 972 F.2d 1145 (10th Cir. 1992), cert. denied 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993); *Berry v. County of Sonoma,* 30 F.3d 1174 (9th Cir.1994), cert. denied —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995); *Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531 (8th Cir. 1993); *Reich v. New York City Transit Authority,* 45 F.3d 646 (2d Cir.1995); *Renfro v. City of Emporia,* 948 F.2d 1529 (10th Cir. 1991), cert. denied 503 U.S. 915, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992); *Wahl v. City of Wichita,* 725 F.Supp. 1133 (D.Kan.1989). *Wahl* involved an agreement requiring that officers who worked in excess of 40 hours per week should receive overtime pay at the rate of one-and-one-half times their regular rate of pay. *Wahl,* 725 F.Supp. at 1136. Such provisions are presumably common in labor agreements throughout the country but do not resolve the compensability issue for FLSA purposes. The agreement did not resolve the issue in *Wahl,* and the City has cited no case where such a provision was conclusive on the question of compensability under the FLSA. *See also, Berry,* 30 F.3d at 1182 (collective bargaining agreement not dispositive); *Reich,* 45 F.3d at 647.

In analyzing a question similar to that presented in the case before us (whether firefighters must be compensated for time spent on call), the Supreme Court noted the fact-specific nature of such determinations and the role which the employment agreement should play in the analysis. The Court stated:

> We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appro-

priate findings of the trial court. This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.

*Skidmore v. Swift & Co.,* 323 U.S. 134, 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944) (citations omitted). The fact that a collective bargaining agreement, rather than a simple employment contract, is involved here does not change this basic analysis. As the Court pointed out in *Barrentine*:

> In contrast to the Labor Management Relations Act, which was designed to minimize industrial strife and to improve working conditions by encouraging employees to promote their interests *collectively*, the FLSA was designed to give specific minimum protections to *individual* workers. . . .

*Barrentine,* 450 U.S. at 739, 101 S.Ct. at 1444 (emphasis in original).

Indeed, the assertion that merely by providing for overtime pay in its collective bargaining agreement an employer may insulate itself from FLSA scrutiny borders on the preposterous. Yet the majority's opinion essentially boils down to just such an assertion.

The majority also suggests that grievance arbitration would be more efficient than litigation under the FLSA in this case. The suggestion is apparently that allowing 12,000 officers to bring individual grievances about meal periods would be more efficient than would a decision about those periods under the FLSA. There might be reasons to prefer tens of thousands of individual grievance procedures over one lawsuit; but "efficiency" is not one of those reasons.

Therefore, I respectfully dissent.