GREENAWAY, JR., Circuit Judge,
dissenting.
Today the Majority holds that Plaintiffs’ Fair Labor Standards Act (“FLSA”) claims should be dismissed based upon a flawed application of the predominant benefit test. Specifically, the Majority erroneously concentrates on whether, under the parties’ collective bargaining agreement (“CBA”), Plaintiffs are currently *159 paid for a portion of their meal period. The Majority thereby disregards Supreme Court precedent on the definition of work. Indeed, Plaintiffs’ current contractual compensation, upon which the Majority focuses, is a red herring that improperly detracts from the factual allegations in the Complaint.[1]
Plaintiffs[2] are corrections officers at the Butler County Correctional Facility who seek compensation for meal periods that they argue constitute compensable work under the FLSA. Although the Majority acknowledges the fact-intensive and circumstance-specific nature of the totality-of-the-circumstances inquiry under the predominant benefit test, see Majority Op. at 156, the Majority does not permit the Plaintiffs in this case to conduct the discovery that would permit them access to the facts and circumstances to meet that standard.
Rather, the Majority misconstrues the predominant benefit standard. Its decision to dismiss relies upon the facts that Plaintiffs may request authorization to leave the prison for their meal period, are compensated for the first forty-five minutes of their hour lunch period, and must be compensated if their meal period is “interrupted.”[3] See CBA, Article V, Section 5.I.D.I. Further, the Majority discusses a Seventh Circuit decision, Leahy v. City of Chicago, 96 F.3d 228 (7th Cir.1996), which is inapposite to the instant case, has been soundly rejected by the two circuits that have considered it, and has been called into question by subsequent Supreme Court precedent.[4]
*160 The issue before us is not whether Plaintiffs are paid for the first forty-five minutes of their meal period and paid if called upon to work during their lunch hour. Nor is the issue before us whether Plaintiffs may request permission to leave the prison.[5] Instead, it is whether Plaintiffs should be paid because they allege that they are required to be prepared to serve at a moment’s notice for the entirety of the meal period. As a result of maintaining this readiness to serve Defendant, Plaintiffs allege that they are subject to a number of restrictions and prohibitions that greatly limit their movement and activities. Considered in their totality, these restrictions create conditions constituting compensable work. As such, one can only conclude that the Complaint was improperly dismissed; I therefore respectfully dissent.
I. Plaintiffs Raise a Plausible Claim that Uninterrupted Meal Periods Are Compensable Work.
In their Complaint, Plaintiffs allege that they must remain in uniform, in the prison, in close proximity to emergency response equipment, and on call to respond to emergencies, for the duration of their meal periods. App. 24, ¶ 27. They also allege that they are not permitted to go outside, sleep, smoke, or run personal errands during this time. Id. ¶¶ 30, 31, 32.
“The central issue in mealtime cases is whether employees are required to ‘work’ as that term is understood under the FLSA.” Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 64 (2d Cir.1997) (citing Henson v. Pulaski Cty. Sheriff Dep’t, 6 F.3d 531, 533-34 (8th Cir.1993)). “[T]he [Supreme] Court [has] held that ‘work’ under the FLSA means ‘physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.’ ” Id. (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)). Indeed, “the Court counseled that the determination of what constitutes work is necessarily fact-bound.” Id. (citing Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); Skidmore, 323- U.S. at 136-37, 65 S.Ct. 161).
When courts evaluate which hours should be compensated as work, “the answer depends [in part] upon the degree to which the employee is free to engage in personal activities during periods of idleness.” Skidmore, 323 U.S. at 138, 65 S.Ct. 161 (internal quotation marks omitted). The Supreme Court has further clarified:
Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer’s property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer’s benefit or for the employee’s is a question dependent upon all the circumstances of the case.
Armour, 323 U.S. at 133, 65 S.Ct. 165.
Where employees have faced significant restrictions for the benefit of their employer, meal periods have been considered compensable work under the FLSA.
During such periods when “workers [were] restricted to the site for the purpose of performing valuable security service for the company,” the Second Circuit *161 found the meal period to be compensable as work. Reich, 121 F.3d at 65. Although observing that “the workers perform different services during meal breaks than throughout the rest of the day,” the Second Circuit reasoned that “the workers’ on-site presence [during meals] is solely for the benefit of the employer and, in their absence, the company would have to pay others to perform those same services.” Id. The court concluded, “[b]y not compensating these workers, [the employer] is effectively receiving free labor.” Id.
Similarly, here, Plaintiffs have alleged that they are required to remain at the correctional facility during their meal period to be available to assist in security measures. Indeed, state regulations require certain staffing levels be maintained at correctional facilities at all times.[6] As in Reich, without Plaintiffs’ presence at the facility during meals, Defendant could be required to hire others during that time period. Plaintiffs’ allegations regarding the restrictions on their movement and activities are sufficient to state a claim under the FLSA that the meal period is compensable work.
The Majority distinguishes this case from Alexander v. City of Chicago — where the Seventh Circuit reversed the district court’s entry of judgment on the pleadings — based on the fact that, there, “police officers were required to receive permission to take a meal period and were not permitted to read ‘nondepartmental publications.’ ” Majority Op. .at 157. Although the police officers in Alexander faced additional prohibitions relating to their personal behavior, they were subject to several of the same restrictions on activity and movement that Plaintiffs face here. There, during meal times the police officers: (1) had to remain within their assigned district; (2) had to remain in uniform; (3) could not nap or rest; and (4) were required to respond to emergencies and requests for assistance from the public. 994 F.2d at 334-35. Here, Plaintiffs: (1) had to remain within the prison; (2) had to remain in uniform; (3) could not sleep;' and (4) were required to respond to emergencies. App. 24, ¶¶ 27-34. As in Alexander, Plaintiffs are required to maintain a physical and mental readiness primarily for the benefit of their employer. Therefore, the Majority’s reliance on Alexander to compel a different result here is misplaced.[7]
II. The Majority’s Reliance on Leahy Is Factually and Legally Flawed.
The Majority also relies on Leahy v. City of Chicago to support its misguided *162 approach in this case. See Majority Op. at 7. However, Leahy is both factually in-apposite and legally outdated. In Leahy, the Seventh Circuit found that because “the collective bargaining agreement’s guarantee of overtime compensation for time worked in excess of eight hours in an eight-and-one-half hour tour of duty protects Chicago police officers’ FLSA rights to overtime compensation[,] ... the agreement is a defense to liability under the FLSA and the plaintiffs’ suit cannot succeed.” 96 F.3d at 282. The instant case is factually dissimilar from Leahy because the CBA here explicitly precludes the arbitrator from making determinations concerning compliance with the FLSA.[8] Indeed, the arbitrator’s ambit here was limited to the scope of the CBA, and the arbitrator did not reach the question of whether the FLSA had been violated.[9]
Further, Leahy’s holding is questionable post-Wright because Wright did not address whether the plaintiffs had exercised a “clear and unmistakable waiver” of their statutory right to a federal forum. See Wright, 525 U.S. at 81-82, 119 S.Ct. 391. Indeed, no court of appeals has followed Leahy in the nineteen years since it was issued. Two of our sister circuits have addressed Leahy, and each has squarely rejected its holding. The Fifth Circuit dismissed Leahy, noting, “[n]ot only is the majority position ‘preposterous,’ it completely ignores the Supreme Court’s decision in Barrentine ” because, “[u]nder Barrentine, [ ] the plaintiffs’ right to pursue a suit under the FLSA is completely independent from their rights under the CBA.” Bernard, 154 F.3d at 263-64 (footnotes omitted) (quoting Leahy, 96 F.3d at 235) (Cudahy, J., dissenting). The First Circuit also rejected the Leahy analysis, observing that it “conflates contractual rights with statutory ones.” Manning, 725 F.3d at 52 n. 9. Given the paucity of support for Leahy and the likelihood that its holding did not survive Wright, the Majority’s reliance on Leahy to dismiss Plaintiffs’ claims is mistaken.
III. Conclusion
In their Complaint, Plaintiffs set forth sufficient allegations to state a claim that their meal period should be considered compensable work under the FLSA. For this reason alone, their claims should not have been dismissed. Further, while discounting Plaintiffs’ fáctual allegations, the Majority decides this matter by overvaluing the CBA’s compensation provisions— disregarding relevant Supreme Court precedent in the process. Ending this lawsuit now is clearly improper. I respectfully dissent.

.As an initial matter, to the extent the Majority relies on CBA compensation provisions in its decision to dismiss Plaintiffs' Complaint, the Supreme Court has instructed that (l).the FLSA takes precedence over CBAs, and (2) a CBA standing alone may not control an FLSA claim. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740-41, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("[Cjongressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement.”); Skidmore v. Swift & Co., 323 U.S. 134, 136-37, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ("Whether [a meal period] falls within or without the [FLSA] is a question of fact [that] involves scrutiny and construction of the agreements .between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.”). The CBA simply does not govern statutory rights, nor can it preclude access to a federal forum. Cf. Alexander v. City of Chi., 994 F.2d 333, 339 n. 11 (7th Cir.1993) ("[W]e are not persuaded by the defendants’ argument that the collective bargaining agreement between the City and its police officers obviates the officers' claim by confirming those parties’ understanding that meal periods are not working time within the FLSA. Although a factfinder might consider such an agreement as one among many factors ... it certainly does not outright preclude the officers’ claim.”). Furthermore, it is well settled— and Defendant concedes — that it is not possible to contract around federal law. See Ap-pellee’s Br. at 17.

. Plaintiff Sandra Babcock moved for conditional collective action certification of a class of similarly situated corrections officers, and over fifty other officers joined the proposed class. However, the District Court dismissed the action before reaching the collective certification motion.

. See Majority Op. at 157 ("[T]he corrections officers here could request authorization to leave the prison for their meal period.”); id. ("[The CBA] provides corrections officers with the benefit of a partially-compensated mealtime and mandatory overtime pay if the mealtime is interrupted by work.”).

. See Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 82, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998); Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 52 n. 9 (1st Cir.2013); Bernard v. IBP, Inc. of Neb., 154 F.3d 259, 264 (5th Cir.1998).

. That Plaintiffs may request permission to leave the prison during the lunch period should have no influence on the Court's decision. There is nothing in the record establishing the frequency with which Plaintiffs are allowed to leave the prison. This is precisely the type of fact-gathering that may be conducted during discovery.

. See 37 Pa.Code § 95.241. The specific standards set for the Butler County Correctional Facility are not in the record at this time; this is another type of fact-gathering that may be conducted during discovery.

. Moreover, at oral argument, Plaintiffs represented that corrections officers face restrictions on reading materials — another similarity to Alexander which weakens the Majority’s attempt to distinguish the case. This is a third example of an area in which factual development should have been allowed.' Nevertheless, the Majority concludes that there has been "sufficient factual development of the facts to enable a capable application of the appropriate predominant benefit standard.” Majority Op. at 158. Plaintiffs, however, are entitled to a correct application of the predominant benefit standard to an appropriately developed record. Even if the District Court had properly determined that the Complaint had been insufficiently pled, the dismissal still would have been improper. Rather, because amendment would not have been futile, Plaintiffs should have been given leave to amend. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 228 (3d Cir.2008) ("[I]n the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint.”) Indeed, "[i]t does not matter whether or not a plaintiff seeks leave to amend.” Id. at 236.

. See Arbitrator’s Decision at 6, 7 ("Simply stated, the CBA does not authorize an arbitrator to resolve FLSA claims.”; "I have not reviewed or considered the FLSA in rendering an Award, and I express no opinion regarding whether or not the FLSA has been violated.”).

. See id. at 6.