# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1721NE

_____

Teresa Kai, on behalf of herself and          *
all others similarly situated; and            *
Stacy Noller, on behalf of herself            *
and all others similarly situated,            *
                                              *
              Appellants,                     *     On Appeal from the United
                                              *     States District Court
         v.                                   *     for the District of
                                              *     Nebraska.
                                              *
Ron Ross, as the Director of the              *
Nebraska Department of Health                 *
and Human Services,                           *
                                              *
              Appellee.                       *

_____

Submitted:  June 19, 2003
Filed:  July 10, 2003

_____

Before LOKEN, Chief Judge, RICHARD S. ARNOLD and BYE, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


      This case is about Temporary Medical Assistance, a federally funded state
program of medical care for the needy and others which the parties refer to as
"TMA." We shall adopt the same usage. The named plaintiffs, Teresa Kai and Stacy

Noller, are members of a class, certified by the District Court, of medically needy caretaker relatives. The class contains about 10,000 single working mothers and other caretaker relatives. Under a provision of what was popularly known as the Welfare Reform Bill, passed in 1996, plaintiffs are ineligible for Medicaid benefits unless they qualify under transitional provisions now found in Sections 1925 and 1931 of the Social Security Act, as amended, 42 U.S.C. §§ 1396r-6, 1396u-1(a), (b). Plaintiffs filed a motion for a preliminary injunction to require the defendant, Ron Ross, Director of the Nebraska Department of Health and Human Services, to continue their benefits. The District Court denied the motion, and this appeal followed on an expedited basis.

In our view, plaintiffs' claim is likely to succeed under the plain meaning of the relevant statutes. We therefore reverse and remand this case to the District Court with the following direction: that the preliminary injunction prayed for by the plaintiffs be granted, that the case proceed to final disposition with reasonable dispatch, and that the Court, after such proceedings as are necessary to put the case in a position for final decision, enter whatever final judgment the law and the facts at that time indicate.

I.

For many years, the principal federally funded public-assistance program in this country was called Aid to Families with Dependent Children (AFDC). This program worked in tandem with Medicaid, a federally funded program of medical assistance for the needy and others created by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. States do not have to participate in Medicaid, but if they choose to do so, as Nebraska has, they must conform to certain requirements set out in federal statutes, one of which, for many years, was that persons receiving AFDC would also be eligible for Medicaid. States were permitted, in addition, to designate

other classes of persons eligible for Medicaid, and, as we shall see, Nebraska, at least at one time, did so.

This regime was fundamentally changed in 1996 by the enactment of welfare-reform legislation that ended the AFDC program and made other important changes in federal assistance to the needy. This enactment was called the Personal Responsibility and Work Opportunity Reconciliation Act, and is codified in various sections of the Social Security Act. The AFDC program was replaced with a new program called Temporary Assistance to Needy Families (TANF). Recipients of TANF are not included in the mandatory groups to whom participating states must afford Medicaid benefits.

Under the 1996 statute's transitional provisions, however, states desiring to participate in Medicaid had to continue paying Medicaid benefits to those persons who had been on AFDC. In addition, certain other persons who had also, in the past, been receiving Medicaid benefits were entitled, under these transitional provisions, to a continuation of those benefits. The issue in this case, broadly stated, is whether the plaintiff class is one of the groups among these other persons (who had not been on AFDC) entitled to the benefits of the transitional provision.

The transitional provision is found in Section 1925 of the Social Security Act, 42 U.S.C. § 1396r-6, which provides up to one year of transitional medical coverage to certain groups. The parties to this case agree that the governing definition is found in Section 1931 of the Act, 42 U.S.C. § 1396u-1(a), (b).

Section 1931 persons are entitled to TMA. We are required to determine what the statute means, and, therefore, as a necessary first step, we set out the language of the relevant parts of Section 1931 in full:

(a) REFERENCES TO TITLE IV-A ARE REFERENCES TO PRE-WELFARE-REFORM PROVISIONS. — Subject to the succeeding provisions of this section, . . . any reference in this title . . . to a provision of part A of title IV, or a State plan under such part or plan, shall be considered a reference to such a provision or plan as in effect as of July 16, 1996, with respect to the State.

(b) APPLICATION OF PRE-WELFARE-REFORM ELIGIBILITY CRITERIA. —

(1) IN GENERAL. — For purposes of this title, subject to paragraphs (2) and (3), in determining eligibility for medical assistance —

(A) an individual shall be treated as receiving aid or assistance under a State plan approved under part A of title IV [AFDC] only if the individual meets —

(i) the income and resource standards for determining eligibility under such plan, and

(ii) the eligibility requirements of such plan under subsections (a) through (c) of section 406 and section 407(a),

as in effect as of July 16, 1996; and

(B) the income and resource methodologies under such plan as of such date shall be used in the determination of whether any individual meets income and resource standards under such plan.

(2) STATE OPTION. — For purposes of applying this section, a State —

(A) may lower its income standards applicable with respect to part A of title IV, but not below the income standards applicable . . . on May 1, 1988;

(B) may increase income and resource standards under the State plan referred to in paragraph (1) . . . by a percentage that does not exceed the percentage increase in the Consumer Price Index . . .; and

(C) may use income and resource methodologies that are less restrictive than the methodologies used under the State plan under such part as of July 16, 1996.

42 U.S.C. § 1396u-1.

More specifically, plaintiffs contend that they are individuals who "shall be treated as receiving" AFDC, 42 U.S.C. § 1396u-1(b)(1)(A) because they had been receiving Medicaid in Nebraska under "income and resource methodologies that [were] less restrictive than the methodologies used under" AFDC, 42 U.S.C. § 1396u-1(b)(2)(C).

The case came before the District Court on motion for preliminary injunction. The standard for determining such motions is familiar. The Court shall weigh the following four factors: (1) the plaintiffs' likelihood of success on their claim; (2) the injury to the plaintiffs that will be irreparable if preliminary relief is erroneously denied; (3) the injury to the defendants that will be irreparable if preliminary relief is erroneously granted; and (4) the public interest. As is often the case, the District Court considered the first factor, likelihood of success on the merits after completion of the case, to be the most important one. After analyzing the relevant statutes, the Court concluded that plaintiffs' likelihood of success was small. It did discuss the other three factors, as was proper, but took the view (with which we agree) that, in the circumstances of this case, the first factor was the most important one. The motion for preliminary injunction was therefore denied. We likewise concentrate our consideration of the case on the first factor. As to that point, we respectfully disagree with the District Court and reverse, for reasons that will shortly be given.

-5-

II.

We have set out the statutory background. Now let us examine how the plaintiffs and their class fit into it. As the District Court found, Teresa Kai takes prescription medications for type II diabetes and high blood pressure. She also suffers from asthma and depression. Ms. Noller has schizophrenia and bipolar disorder, and takes four prescription drugs that have allowed her to perform successfully her daily activities and to maintain employment. They were within the class of people eligible for Medicaid benefits when the Welfare Reform Bill passed in 1996, and remained within that class until the State of Nebraska amended the relevant statute in 2002. Plaintiffs were not receiving, and were not eligible for, AFDC (called in Nebraska ADC, or Aid to Dependent Children). They were, however, eligible for, and receiving, Medicaid benefits under a state-determined method of counting income called "stacking." (No one seems to know exactly what this term means or why it is used in the present context, so we assume the word itself is not important.) Under Neb. Rev. Stat. § 68-1020(2)(d) (2001), in effect until last year, plaintiffs were eligible for Medicaid as medically needy caretaker relatives. A net countable income of $392.00 per month was attributed to them.

This all changed with the enactment of LB 8, Laws 2002, Second Special Session, § 2. The new law amended the relevant portion of Neb. Rev. Stat. § 68-1020 by ending the so-called "stacking" method of determining income level for Medicaid eligibility. This change had the effect of making plaintiffs and the members of their class ineligible for Medicaid.

For clarity of analysis, and so that readers may have before them the pertinent portion of the relevant federal statute, we now again quote Section 1931 of the Social Security Act, 42 U.S.C. § 1396u-1(a), (b), leaving out certain superfluous parts. (Recall that by virtue of Section 1925, 42 U.S.C. § 1396r-6, persons who were part

of the group covered by Section 1931 are entitled to Temporary Medical Assistance if their eligibility is lost by reason of a state's amending its laws.)

(a) REFERENCES TO TITLE IV-A ARE REFERENCES TO PRE-WELFARE-REFORM PROVISIONS. — [A]ny reference . . . to a provision of part A of title IV, or a State plan under such part . . ., including income and resource standards and income and resource methodologies . . . shall be considered a reference to such a provision or plan as in effect as of July 16, 1996 . . ..

(b) APPLICATION OF PRE-WELFARE-REFORM ELIGIBILITY CRITERIA. —

(1) IN GENERAL. — [S]ubject to paragraphs (2) and (3), in determining eligibility for medical assistance —

(A) an individual shall be treated as receiving aid or assistance under . . . [AFDC] only if the individual meets . . . the income and resource standards for determining eligibility under such plan . . . as in effect as of July 16, 1996 . . ..

(2) STATE OPTION. — For purposes of applying this section, a State — . . .

(C) may use income and resource methodologies that are less restrictive than the methodologies used under the State plan under such part as of July 16, 1996.

42 U.S.C. § 1396u-1.

The plain language of this provision appears to fit the plaintiffs and their class. They were not receiving AFDC, but the effect of the provision is clearly to make eligible for medical assistance not only persons who were receiving AFDC on July 16, 1996, but also certain other persons. Section 1396u-1(b)(1) makes persons

receiving AFDC eligible for medical assistance, but the provision is expressly made "subject to paragraphs (2) and (3)." The phrase "subject to" must mean that, in the event of any conflict between (2) or (3) and (1), the former two paragraphs will prevail, or, in the present context, that (2) and (3) add persons to the group that is already eligible under (1) by virtue of being AFDC recipients. It appears to us that plaintiffs are members of a group that was added in this way. They had been beneficiaries of "stacking," which is an "income . . . methodolog[y] that [is] less restrictive than the methodologies used under" Nebraska's AFDC plan on July 16, 1996. The "stacking" less-restrictive income methodology has now been removed by statute. This the State may do. Medically needy caretaker relatives are not entitled to Medicaid by reason of any mandatory provision of federal law. But, when the State removes these persons, it must do so subject to the condition, under Section 1925, that they receive Transitional Medical Assistance.

As we understand it, the State makes two principal arguments against this conclusion. First, it emphasizes that plaintiffs were never eligible for, and never received, AFDC. This is true but, it seems to us, irrelevant. Section 1931 quite clearly covers not only those actually receiving AFDC, but additional persons who are "treated as receiving" AFDC. These additional persons are described, in part, under paragraph (2) which we have just attempted to parse. In addition, the State argues that plaintiffs' theory of the case is based on a misunderstanding of "stacking" and its repeal. The stacking methodology, the State argues, produced a $392.00 figure for the income of the medically needy caretaker relative, but this was only one component in determining a family's maximum income level. It is hard for us to understand how this argument helps the State. The total countable income of a family, to be sure, is the relevant factor for purposes of determining eligibility for AFDC. But plaintiffs have never been eligible for AFDC, and are not claiming that they should have been. Nor, as we have seen, does Section 1931 limit its beneficiaries to persons who had been receiving AFDC. The point is that plaintiffs had been receiving Medicaid, and the purpose of Section 1931, as the statute itself

states, is to determine "eligibility for medical assistance," § 1396u-1(b)(1). The key point is that, by reason of "stacking," plaintiffs were eligible for Medicaid until the State's enactment of the 2002 Amendment. Now, because "stacking" has been eliminated, they are not. They appear to us to fall precisely within the meaning of Section 1931.

One other point needs to be addressed. The State relies on what it considers to be conclusive advice from the federal government. On August 28, 2000, Thomas W. Lenz, Associate Regional Administrator for Medicaid and State Operations of the Health Care Financing Administration,[1] wrote to Mr. Ross, the defendant in this case. The State had requested clarification on the relationship between Sections 1931 and 1925 of the Social Security Act. The letter is in evidence as defendant's exhibit 108. The letter states, among other things, that:

> The 1931 group is a new group of categorically [sic] eligibles who meet the requirements of the ADC program but do not receive a grant. . . . TMA is based on eligibility for Medicaid only under the 1931 group. Individuals who are eligible under poverty level groups or as medically needy or any other group other than 1931 are not eligible for TMA.

We can understand why the State relies on this letter. It strongly implies, if it does not state outright, that persons receiving Medicaid as medically needy are not within Section 1931 and are therefore not eligible for TMA. We note first that the letter is not a regulation of the Department of Health and Human Services, nor is it part of generally published advice, for example, a practice manual distributed nationwide. It is simply a letter from the Associate Administrator of the region of the

---

[1]The name of this agency has been changed. It is now called the Centers for Medicare and Medicaid Services.

Health Care Financing Administration of which Nebraska is a part. Such an expression of opinion would not be entitled to the level of deference set out in the Supreme Court's landmark decision in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). We should consider it respectfully, and, indeed, we have done so, but it is worth no more than its inherent persuasive value. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) ("The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."). We do not find the letter persuasive. It says, in effect, that Section 1931 is limited to those who meet the income and resource standards for AFDC eligibility. The plain language of the statute is otherwise. To be sure, only people within Section 1931 are eligible for TMA. But Section 1931 itself, it seems to us, states in unmistakable terms that it is not limited to AFDC-eligibles. Otherwise, the "treated as" language and the phrase "subject to paragraphs (2) and (3)" would be meaningless. Accordingly, although we understand why the State would rely on this letter, it appears to deserve no legal weight. The State also cites certain e-mails to one of its employees from a person who works for the federal Medicaid program. The purport of the e-mails is not clear to us, and, in any event, they add nothing to Mr. Lenz's letter.

III.

So far, our discussion has been limited to the likelihood of plaintiffs' success on the merits. In discussing this issue, we have taken care to use verbs like "seems" or "appears." We are not making a final determination of the merits at this time, nor does the test for granting a preliminary injunction require us to do so. The statutes and administrative practices involved here are complicated, to say the least. It is possible that additional legal argument will illuminate the matter further during later stages of this case. For the present, however, we disagree with the District Court on

-10-

this point, and we hold that plaintiffs have shown a substantial likelihood of success on the merits as to the meaning of Section 1931. The other preliminary-injunction factors do not need extended discussion. As the District Court observed, the danger to plaintiffs' health, and perhaps even their lives, gives them a strong argument of irreparable injury. The State also has such an argument, but the injury to the State, should the preliminary injunction prove to have been erroneously granted, is not so significant as the injury to the plaintiffs. The public-interest factor does not seem to cut either way in this case.

Accordingly, the order of the District Court, denying plaintiffs' motion for preliminary injunction, is reversed. This case is remanded to that Court with instructions to grant the preliminary injunction prayed for by plaintiffs and, thereafter, to proceed to a final determination on the merits. That the State has a real financial problem, and that it has acted in good faith, we do not question.

We have attempted to decide this appeal quickly, because the health of thousands of people is involved, and because the matter is of great public interest. We are sure that the District Court will act with similar expedition, as it already has in the previous stages of this case.

Reversed and remanded with instructions.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.