**DPI TELECONNECT, L.L.C., Plaintiff,**

v.

**Edward S. FINLEY, Jr., Chairman, North Carolina Utilities Commission; William T. Culpepper, III, Commissioner, North Carolina Utilities Commission; Lorinzo L. Joyner, Commissioner, North Carolina Utilities Commission; Bryan E. Beatty, Commissioner, North Carolina Utilities Commission; Susan W. Rabon, Com-** missioner, North Carolina Utilities Commission; Tonola D. Brown–Bland, Commissioner, North Carolina Utilities Commission; Lucy T. Allen, Commissioner, North Carolina Utilities Commission; Bell South Telecommunications, Inc., doing business as AT & T North Carolina; Defendants.

No. 5:10–CV–466–BO.

United States District Court, E.D. North Carolina, Western Division.

Feb. 19, 2012.

Anton C. Malish, Malish & Cowan, PLLC, Austin, TX, David S. Wisz, Bailey & Dixon, Raleigh, NC, for Plaintiff.

Margaret A. Force, N.C. Department of Justice, Raleigh, NC, Dennis G. Friedman, Jeffrey M. Strauss, Mayer Brown LLP, Chicago, II, Patrick W. Turner, AT & T South Carolina, Columbia, SC, Robert B. Cordle, Mayer Brown LLP, Charlotte, NC, for Defendants.

## ORDER

TERRENCE W. BOYLE, District Judge.

This matter is before the Court on Plaintiff's Motion for Summary Judgment [DE 41]. For the following reasons, Plaintiff's Motion is DENIED and summary judgment is entered for Defendants. Because the Court here decides the dispositive Motion, Defendant's Motion for Decision on the Briefs [DE 73], Plaintiff's Motion for Oral Argument on Summary Judgment [DE 56], Motion to Abate Pending Related Action by the North Carolina Utilities Commission [DE 57], and Opposed Motion for Oral Argument on Summary Judgment [DE 74] are DENIED as MOOT. In light of Judge Louise W. Flanagan's Order of January 19, 2012 in *dPi Teleconnect, L.L.C. v. Bell South Telecomms., L.L.C.,* No. 5:11–CV–576–FL, Plaintiff's Motion to Consolidate Cases [DE 77] is also DENIED as MOOT.

## BACKGROUND

This is an action for declaratory judgment to determine whether the North Carolina Utilities Commission ("NCUC") erred in determining how promotional credits should be calculated for resale services that Defendant Bell South Telecommunications, Inc. ("AT & T North Carolina"), sold to dPi pursuant to the requirements of the Telecommunications Act of 1996 ("the Act"). *See* 47 U.S.C. §§ 251(c)(4); 252(d)(3) (1999). dPi filed a complaint with the NCUC seeking a determination that it is entitled to recovery of promotional credits from AT & T North Carolina pursuant to the parties' interconnection agreements ("ICAs"). Following an evidentiary hearing and oral arguments, the NCUC issued an order on October 1, 2010 [DE 39–16], finding that dPi is entitled to credits for the promotions from 2003 through mid–2007 and that the promotional credits must reflect an adjustment of both the retail rate and the corresponding wholesale discount that applies for services sold to resellers. dPi now seeks declaratory relief from the NCUC decision.

dPi argues that it is entitled to the full value of AT & T North Carolina's cashback promotion because AT & T North Carolina cannot discriminate against competitive local exchange carriers ("CLECs") as against retail customers—otherwise, AT & T North Carolina could price CLECs out of the market and defeat the purpose of the Act. AT & T North Carolina argues that dPi is only entitled to credits in the amount of the retail cashback amount, less the percentage discount (21.5%) offered to resellers—this preserves the discount to resellers, and gives them the "benefit" of the promotion without giving the actual cash or gift of the promotion to retail customers. This Court's ruling is guided by the Court of Appeals for the Fourth Circuit's decision in *BellSouth Telecomms., Inc. v. Sanford.* 494 F.3d 439, 447 (4th Cir.2007). Because the NCUC properly determined the method for calculating promotional credits, summary judgment is granted for Defendants.

## DISCUSSION

### Standard of Review

This Court reviews actions of state commissions taken under 47 U.S.C. §§ 251 and 252 *de novo* to determine whether they

conform with the requirements of those sections. *Id.* However, the order of the state commission reflects "a body of experience and informed judgment to which courts ... may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The NCUC proceedings involved initial pleadings, discovery, pre-filed testimony, evidentiary hearings, and the submission of written briefs. The NCUC issued a recommended order, allowed the parties to file exceptions, and then issued a final order with additional explanation. Although Defendants contend that the correct way to calculate the amount of promotional credits is predominantly a factual issue and entitled to "substantial evidence" review, this Court disagrees. Determining the proper method of calculation requires interpretation of the Act and of Fourth Circuit precedent, and as such it requires the application of law to fact. Therefore, this Court will apply *de novo* review with appropriate *Skidmore* deference to the NCUC's special role in the regulatory scheme. *See Sanford*, 494 F.3d at 447–49.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56. Here, all the parties concede that no genuine issue of material fact exists; they dispute only matters of law.

### 1. The Telecommunications Act of 1996

The Telecommunications Act of 1996 introduced a competitive regime for local telecommunications services, which had previously been provided primarily by regional telecommunications monopolies. To encourage vibrant competition, the Act requires incumbent local exchange carriers ("ILECs"), such as AT & T North Carolina, to enter into interconnection agreements ("ICAs") with competitive local exchange carriers ("CLECs"), such as dPi. These agreements establish rates, terms, and conditions under which ILECs provide their competitors with interconnection with the incumbent's network and telecommunications services at wholesale rates, for competitors to resell at retail. The statute sets the pricing standards for resale services.

### 2. Calculating the Value of Promotional Credits

The Act requires that ILECs provide telecommunications services to CLECs at wholesale price-defined as the retail rate for that service less "avoided retail costs." 47 U.S.C. § 252(d)(3); 47 C.F.R. § 51.607. However, this "avoided retail costs" figure is not an individualized determination that actually reflects the costs avoided on each transaction. Such a scheme would be cumbersome and inadministrable. Foreseeing this fact, the FCC regulations provide that each state commission may use a single uniform discount rate for determining wholesale prices, noting that such a rate "is simple to apply, and avoids the need to allocate costs among services." *Local Competition Order* ¶ 916. The NCUC set AT & T North Carolina's discount rate at 21.5% for the residential services at issue here on December 23, 1996.[1] In other words, if AT & T North Carolina sells a service to its residential retail customers for $100 a month, it must sell the same service to dPi and other resellers for $78.50.

When AT & T North Carolina offers promotions to attract potential retail customers, and those promotions are available

---

1. *In the Matter of Petition of AT & T Communications of the Southern States, Inc. For Arbitration of Interconnection with BellSouth Telecommunications, Inc.*, Docket No. P–140, Sub. 50 at 43.

at retail for more than 90 days, AT & T North Carolina must also offer a promotional benefit to resellers, like dPi, who purchase services subject to the promotion. 47 C.F.R. § 51.613(a)(2); *Sanford*, 494 F.3d at 442 (holding that promotional offerings that exceed 90 days "have the effect of changing the actual retail rate to which a wholesale requirement or discount must be applied."). When these promotions take the form of a cashback benefit, resellers are typically afforded a credit, which is applied against the amounts the reseller owes to AT & T North Carolina.

In *Sanford*, the Fourth Circuit reviewed the NCUC's order of June 3, 2005 [2], noting that "while the value of a promotion must be factored into the retail rate for the purposes of determining a wholesale rate for would-be competitors, the promotion *itself* need not be provided to would-be competitors." *Sanford*, 494 F.3d at 443. Rather, the order requires that "the price lowering impact of any such 90–day–plus promotions on the real tariff or retail list price be determined and that the benefit of such a reduction be passed on to resellers *by applying the wholesale discount to the lower actual retail price.*" *Id.* at 443–44 (emphasis added). The Fourth Circuit noted that promotions offered for more than 90 days result in a promotional rate that "becomes the 'real' retail rate available in the marketplace." *Id.* at 447.

dPi contends that it is entitled to the full face value of the cashback amount [DE 1 at 5]. AT & T North Carolina contends that it owes dPi credits for the value of the cashback amount reduced by the 21.5% wholesale discount [DE 39–10 at 20]. The NCUC adopted AT & T North Carolina's method of calculating the value of the pro-motional credits. AT & T North Carolina's method properly makes wholesale discount adjustments to both relevant rates, as dictated by the statute. dPi originally paid the standard retail rate less the wholesale discount. After the *Sanford* decision, it is clear that dPi should have paid the promotional rate less the wholesale discount. As noted by the NCUC, the difference between these two figures accurately reflects the value of the credits due to dPi. This figure can alternatively be calculated by reducing the cashback amount by the 21.5% wholesale discount, as AT & T North Carolina suggests.

When the NCUC considered the appropriate method for calculating promotion credits, dPi had already paid AT & T North Carolina for the services—using AT & T North Carolina's standard retail rate less the wholesale discount of 21.5% for residential services. Following the reasoning of *Sanford*, dPi is entitled only to the difference between the rate that it originally paid and the rate that it should have paid to AT & T North Carolina. The rate that it should have been charged is the promotional rate available to retail customers less the wholesale discount for residential services, or 21.5%.

dPi suggests that this method produces anomalous results because, in the case where the cashback amount exceeds the monthly retail price, the "price" to the retail customer in a given month is a negative number. AT & T North Carolina has, therefore, effectively "paid" the retail customer that negative price during the month of service in which the cashback benefit is received. dPi argues that this cannot be the correct result because the Act dictates that the wholesale price must

---

**2.** *In re Implementation of Session Law 2003–91, Senate Bill 814 Titled "An Act to Clarify the Law Regarding Competitive and Deregulated Offerings of Telecommunications Services,"* N.C. Utilities Comm'n, Docket No. P–100, Sub 72b (June 5, 2005) (Order Clarifying Ruling on Promotions and Denying Motions for Reconsideration and Stay).

always be less than the retail price. However, dPi misapprehends the Act's mandate. As noted by the FCC in the *Local Competition Order,* "short-term promotional prices do not constitute retail rates for the underlying services and are thus not subject to the wholesale rate obligation." ¶ 949. Such short-term rates are exempted from the ILEC's resale obligation so long as the rate is "in effect for no more than 90 days." 47 C.F.R. § 51.613(a)(2). Even if dPi's anomaly should occur, the effect of a cashback amount greater than the monthly retail price is appropriate and permitted for a period of 90 days or less, after which any continuing distortion could be remedied by additional promotional credits. '

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and summary judgment is entered for Defendants. Because the Court here decides the dispositive Motion, Defendant's Motion for Decision on the Briefs [DE 73], Plaintiff's Motion for Oral Argument on Summary Judgment [DE 56], Motion to Abate Pending Related Action by the North Carolina Utilities Commission [DE 57], and Opposed Motion for Oral Argument on Summary Judgment [DE 74] are DENIED as MOOT. In light of Judge Louise W. Flanagan's Order of January 19, 2012 in *dPi Teleconnect, L.L.C. v. Bell South Telecomms., L.L.C.,* No. 5:11–CV–576–FL, Plaintiff's Motion to Consolidate Cases [DE 77] is also DENIED as MOOT. The Clerk is DIRECTED to enter summary judgment for Defendants.