GREGORY, Circuit Judge,
dissenting.
In affirming the district court’s grant of summary judgment, the majority misapprehends this Circuit’s holding in Kelly v. Hines-Rinaldi, 847 F.2d 147 (4th Cir. 1988), and misapplies the test announced in Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Therefore, I respectfully dissent.
I.
In Kelly an employee filed a lawsuit alleging that his former employer violated the Fair Labor Standards Act (“FLSA”), codified at 29 U.S.C. § 201 et seq. (1982), by failing to pay him overtime. The undisputed facts in Kelly are set forth below:
Hines-Rinaldi hired Kelly on March 12, 1982 to perform light housekeeping duties during the hours of 9:00 p.m. to 12 midnight and 6:30 a.m. to 8:30 a.m., six days per week. During the night hours between midnight and 6:30 a.m. Kelly occupied an apartment on the premises of the funeral home. This arrangement benefitted both parties, since a zoning ordinance required that someone live on the premises of the funeral home and Kelly paid nothing for the apartment.... Between midnight and 6:30 a.m., Kelly’s only duties were to answer the telephone, if it rang, and to go out and pick up a corpse if required. If the telephone was unanswered in the funeral home after three rings, it was answered in one of three other residences where the telephone rang simultaneously. If the call involved a request to pick up a corpse, whoever answered the call would, in turn, call an assistant to help with the pick up. During the 20-month period prior to the filing of this lawsuit, there had been an average of 3.35 telephone calls and 2.2 trips to pick up corpses per month. The average time spent per trip was 49.7 minutes.
Kelly, 847 F.2d at 147-48. Kelly sought overtime pay under the theory that he was employed by Hines-Rinaldi from 9:00 p.m. to 8:30 a.m. the next morning. The employer disagreed, arguing that Kelly was merely waiting to be engaged during the time between shifts and, therefore, was not working. The district court granted summary judgment to the employer, finding as *592 a matter of law that the time between shifts was “waiting time” and, as such, was not compensable overtime.
As the majority recognizes at p. 587 of its opinion,”[T]here is no legal formula to resolve the issue.” Thus, the Supreme Court has emphasized that whether waiting time is work time under the FLSA raises “a question of fact to be resolved by appropriate findings of the trial court.... Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged.” Skidmore, 323 U.S. at 136-37, 65 S.Ct. 161; Kelly, 847 F.2d at 148.
Acknowledging that the Skidmore test requires a fact-intensive analysis, the Kelly court nonetheless found that summary judgment was appropriate because “[t]he facts in this case are basically undisputed.” 847 F.2d at 147. Importantly, those facts included a concession by the employee that he averaged no more than two hours of work per month between the hours of midnight and 6:30 a.m.
In the present case, there is no similar concession by the Appellants. Although the Caretakers unreasonably seek compensation for every hour that they were required to be present in the parks, this fact should not preclude them from recovering under the FLSA for time actually worked. The parks remained open from daylight to dusk, 365 days a year. J.A. at 178. Assuming an average of twelve hours of daylight, the parks were open for business eighty-four hours a week. Since Appellants were required to “be of assistance to park users” while the parks were open to the public, there exists a legitimate factual question as to the amount of time worked by Appellants during business hours. J.A. at 601.
For example, Appellants were required to open the park gates in the morning, close the gates in the evening, clean the bathrooms, pick up trash, and perform moderate maintenance and repairs to the water fountains, bathroom toilets, bleachers, and picnic tables. J.A. at 200-01. Depending on park traffic, Appellants might be required to repeat these tasks multiple times a day. J.A. at 209.
On the limited record before this Court, it is impossible to quantify the amount of time that the Caretakers spent in the performance of their duties. There is nothing, for instance, indicating how long it would take to clean one of the park’s bathrooms, or how many times a day this job would need to be performed. Although these fact-laden questions remain unanswered, the majority has elected to transform the issue from a question of fact into a pure question of law.
II.
In making this transformation, the Court commits three errors. The majority: (1) misapplies the standard for summary judgment; (2) misinterprets 28 C.F.R. § 785.23; and (3) misreads Kelly’s simple application of Skidmore to create an entirely new rule for FLSA cases.
A.
On its motion for summary judgment, the burden is on Baltimore County to show that “there is no genuine issue as to any material fact....” Fed.R.Civ.P. 56(c); Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir.2001). That is, the County must show that no reasonable jury could conclude that Appellants were under-compensated for at least some of the hours that they worked. As the majority explains, “Dividing the weekly pay [$163.33] by the minimum hourly wage [$5.15], ... each Caretaker couple was compensated for no more than 4.5 hours of work per day, approximately 32 hours per week.” Majority Op. at 590. Thus, the question for summary judgment becomes whether a reasonable jury could find that *593 the Caretakers worked more than 4.5 hours per day.
Despite the majority’s assertion to the contrary, the County’s motion is not “properly-supported” on this point. Majority Op. at 588. Appellee has presented no evidence to suggest that the Caretakers— who opened and closed the parks, cleaned the restrooms, picked up the trash, performed moderate maintenance, kept an eye out for potential vandals, and generally made themselves available to park users — could not possibly have worked more than 4.5 hours a day.
Instead of noting Appellee’s lack of evidence, the Court affirms the district court’s grant of summary judgment because the non-movants “have failed to set forth any specific facts.” Majority Op. at 588. Admittedly, the Caretakers have not provided a detailed accounting of the exact hours they worked.* Yet, as explained above, it is not their burden to prove conclusively that they worked more than thirty-two hours a week. Appellants have presented evidence of the kind of activities that they regularly performed as Caretakers. Because the County has not proven that these duties took less than 4.5 hours a day to complete, a legitimate factual issue remains. The movant has therefore failed to meet its burden under Rule 56(c), and summary judgment is improper.
B.
The Court’s second error is in interpreting 28 C.F.R. § 785.23 to require the Caretakers to “produce specific facts to ... support their assertion that they were ‘working’ within the meaning of the FLSA the entire time they were present in the park.” Majority Op. at 587 (emphasis added). The regulation states, “An employee who resides on his employer’s premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises.” 28 C.F.R. § 785.23. While this language creates a presumption that the Caretakers did not work twenty-four hours a day, it does not require Appellants to prove that they were working “the entire time” to be able to state a claim under the FLSA.
As explained above, Appellants are entitled to damages under the FLSA if they worked more than 32 hours per week. The evidence of the Caretakers’ varied employment duties creates a genuine issue as to this material fact that precludes summary judgment.
C.
The Court’s most serious error, however, is its suggestion that Kelly v. Hines-Rinaldi narrows the application of Skidmore. The majority explains:
The Caretakers argue that under the Skidmore test, summary judgment is inappropriate because whether they were “engaged to wait” or “waiting to be engaged” is itself a material issue of factual dispute. This court, however, previously has rejected such a reading of Skidmore by determining that an employee was “waiting to be engaged” as a matter of law.
Majority Op. at 587. The majority does not point to any language in Kelly that would limit Skidmore’s fact-based approach, or would create a presumption in favor of employers.
The sole issue before the Kelly court was “whether under the facts of this case *594 the hours between midnight and 6:30 a.m. are properly considered working hours.” 847 F.2d at 148. After reviewing the undisputed facts, the court noted, “Numerous cases have held that nighttime hours in circumstances similar to the situation presented by this case are not working time.” Id. The Court then applied Skidmore, and affirmed the district court. In short, Kelly was nothing more than the a straightforward application of Skidmore to the facts of one particular case. This Court, however, cites Kelly for the general proposition that time spent living on an employer’s premises will, as a matter of law, be presumed to be for the employee’s benefit, not the employer’s. See Majority Op. at 588 n. 5.
In his concurrence in Kelly, Judge Murnaghan worried that future courts might misunderstand the court’s holding, expanding it to establish just such a general rule of law. Such an expansion, he counseled, would be a mistake. “A general rule of that type favoring the employer could hold the potential for abuse____” Kelly, 847 F.2d at 149. He continued, “Judge Chapman [in writing the majority opinion,] has largely allayed my concerns by carefully confining his decision in a manner comporting with the finest traditions of Anglo American jurisprudence and deciding only ‘under the facts of this case.’ As he points out, the question is preeminently one of fact....” Id. Despite this explicit warning, the majority today invents a new, broadly worded rule.
Because this rule directly contradicts Skidmore’s pronouncement that these FLSA claims involve “questionfs] of fact to be resolved by appropriate findings of the trial court,” I respectfully dissent.

 Appellants were seeking compensation for the full 24 hours that they were required to be on premises each day. Apparently, they did not wish to limit their FLSA claim by asserting that they worked a specific number of hours — more than 4.5 hours per day, but less than 24 hours. For this reason, they did not submit any affidavits as to the exact hours worked. Instead, their evidence focused on their daily employment duties.