Justice Stevens,
with whom Justice Breyer joins, dissenting.
Diplomatic channels provide the normal method of resolving disputes between local governmental entities and foreign sovereigns. See Schooner Exchange v. McFaddon, 7 Cranch 116, 146 (1812). Following well-established international practice, American courts throughout our history haye consistently endorsed the general rule that foreign sovereigns enjoy immunity from suit in our courts. See Verlinden B. V. v. Central Bank of Nigeria, 461 U. S. 480, 486 (1983); Nevada v. Hall, 440 U. S. 410, 417 (1979). The fact that the immunity is the product of comity concerns rather than a want of juridical power, see Verlinden B. V., 461 U. S., *203 at 486, does not detract from the important role that it performs in ordering our affairs.
The Foreign Sovereign Immunities Act of 1976 (FSIA) both codified and modified that basic rule. The statute confirms that sovereigns are generally immune from suit in our courts, 28 U. S. C. § 1604, but identifies seven specific exceptions through which courts may accept jurisdiction, § 1605(a). None of those exceptions pertains, or indeed makes any reference, to actions brought to establish a foreign sovereign’s tax liabilities. Because this is such an action, I think it is barred by the general rule codified in the FSIA.
It is true that the FSIA contains an exception for suits to resolve disputes over “rights in immovable property,” § 1605(a)(4), and New York City law provides that unpaid real estate taxes create a lien that constitutes an interest in such property, N. Y. C. Admin. Code § 11-301 (Cum. Supp. 2006). It follows that a literal application of the FSIA’s text provides a basis for applying the exception to this case. See ante, at 197-199. Given the breadth and vintage of the background general rule, however, it seems to me highly unlikely that the drafters of the FSIA intended to abrogate sovereign immunity in suits over property interests whose primary function is to provide a remedy against delinquent taxpayers.
Under the Court’s logic, since “a suit to establish the validity of a lien implicates ‘rights in immovable property,’” ante, at 199, whenever state or municipal law recognizes a lien against a foreign sovereign’s real property, the foreign government may be haled into federal court to litigate the validity of that lien. Such a broad exception to sovereign immunity threatens, as they say, to swallow the rule. Under the municipal law of New York City, for example, liens are available against real property, among other things, to compel landowners to pay for pest control, emergency repairs, and sidewalk upkeep. See N. Y. C. Admin. Code §§ 17-145,17-147,17-151(b) (2000); see also M. Mitzner, Liens *204 and Encumbrances, in Real Estate Titles 299, 311-314 (J. Pedowitz ed. 1984). A whole host of routine civil controversies, from sidewalk slip-and-falls to landlord-tenant disputes, could be converted into property liens under local law, and then used — as the tax lien was in this case — to pierce a foreign sovereign’s traditional and statutory immunity. In order to reclaim immunity, foreign governments might argue in those cases — just as the Governments of India and the People’s Republic of Mongolia tried to argue here — that slip-and-fall claims, even once they are transformed into property liens, do not implicate “rights in immovable property.” But the burden of answering such complaints and making such arguments is itself an imposition that foreign sovereigns should not have to bear.
The force of the arguments of the Solicitor General as amicus curiae supporting petitioners buttresses my conviction that a narrow reading of the statutory exception is more faithful to congressional intent than a reading that enables a dispute over taxes to be classified as a dispute over “rights in immovable property.” It is true that insofar as the FSIA transferred the responsibility for making immunity decisions from the State Department to the Judiciary, Verlinden B. V., 461 U. S., at 487-488, the views of the Executive are not entitled to any special deference on this issue. But we have recognized that well-reasoned opinions of the Executive Branch about matters within its expertise may have the “power to persuade, if lacking power to control.” Skidmore v. Swift & Co., 323 U. S. 134, 140 (1944).
And I am persuaded. At bottom, this case is not about the validity of the city’s title to immovable property, or even the validity of its automatic prejudgment lien. Rather, it is a dispute over a foreign sovereign’s tax liability. If Congress had intended the statute to waive sovereign immunity in tax litigation, I think it would have said so.
Accordingly, I respectfully dissent.