Justice Breyer,
concurring.
I join the Court’s opinion with one qualification: My concurrence in the Court’s views rests in part upon the fact that the federal agency that administers the Medicaid statute, known as the Centers for Medicare & Medicaid Services, has reached the same conclusion.
The question before us is how to measure what share of a judgment or settlement of an accident victim’s lawsuit represents payment (or reimbursement) for health care items (or services) for which a State has already paid on behalf of the victim. The statute is silent on the question. It simply says that a State may recover the amount of “payment” that the State has made on behalf of the victim “for medical assistance for health care items or services” from funds that “any other party” has paid “for such health care items or services.” 42 U. S. C. § 1396a(a)(25)(H). Moreover, the question focuses upon a comparatively minor matter of statutory detail, not a major issue of far-reaching statutory policy. It concerns everyday administration. It calls for expertise of a kind that the administering agency is more likely than a court to possess. And any of several different answers to the question would seem reasonable. Under these circum *645 stances, normally we should find that Congress delegated to the agency authority to fill the statutory gap, and we should uphold the agency’s conclusion as long as it is reasonable. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 844 "(1984).
Here, however, the agency did not engage in rulemaking procedures, it did not carefully consider differing points of view of those affected, it did not set forth its views in a manual intended for widespread use, nor has it in any other way announced an interpretation that Congress would have “intended ... to carry the force of law.” United States v. Mead Corp., 533 U. S. 218, 221 (2001). Indeed, the agency does not claim that it exercised any delegated legislative power.
Neither do the documents in which the agency set forth its position (a memorandum and a letter) have much “ ‘power to persuade.’ ” Christensen v. Harris County, 529 U. S. 576, 587 (2000) (quoting Skidmore v. Swift & Co., 323 U. S. 134, 140 (1944)). Their reasoning is skimpy. And the conclusion now advanced by the agency represents a radical departure from the agency’s previous position. See App. to Pet. for Cert. 129a, 141a-142a. Thus, the Solicitor General does not ask us to defer to the agency’s views—and understandably so.
Nonetheless, the Administrative Procedure Act is not the Tax Code. And cases that seek to determine whether Congress intended courts to give weight to agency views provide rules of thumb, general principles meant to guide interpretation, not rigid rules that narrowly confine it. They seek to advance Congress’ intent as embodied in particular statutory schemes by helping courts to determine whether, and how, Congress intended those courts to respect an agency’s expertise when reasonably exercised in particular cases. They seek to allocate the law-interpreting function between court and agency in a way likely to work best within any particular statutory scheme. But they do not purport to do more than *646 that. In particular, they do not set forth all-encompassing absolute rules, impervious to nuance and admitting of no exceptions. Felix Frankfurter’s observation, made many years ago, remains valid today: “The problems subsumed by . . . ‘administrative discretion’... must be related to ... the particular interest... as to which ‘administrative discretion’ is exercised.” The Task of Administrative Law, 75 U. Pa. L. Rev. 614, 619-620 (1927). That is to say, “the standard doctrines of administrative law . . . should not be taken too rigidly.” Jaffe, Comment, Administrative Law: Burden of Proof and Scope of Review, 79 Harv. L. Rev. 914, 918 (1966).
Thus, even though this case does not fall directly within a case-defined category, such as “Chevron deference,” “Skid-more deference,” “Beth Israel deference,” “Seminole Rock deference,” or deference as defined by some other case, I believe the agency, in taking a position, nonetheless retains some small but special “power to persuade.” Skidmore, supra, at 140. See generally Eskridge & Baer, The Continuum of Deference: Supreme Court Treatment of Agency Statutory Interpretations From Chevron to Hamdan, 96 Geo. L. J. 1083 (2008). And I would consequently to some degree take account of, and respect, the agency’s judgment.
I cannot measure the degree of deference with the precision of a mariner measuring a degree of latitude. But it is still worth noting that the agency’s determination has played some role in my own decision. That is because the agency, after looking into the matter more thoroughly (perhaps after notice-and-comment rulemaking), might change its mind. Given the nature of the question and of the agency’s expertise, courts, I believe, should then give weight to that new and different agency decision. Cf. National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U. S. 967, 980-986 (2005). In my view, today’s decision does not freeze the Court’s present interpretation of the statute permanently into law.
With that understanding, I join the Court’s opinion.