**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KERN OIL & REFINING CO., | No.   21-71246 |
| Petitioner, | No. |
| v. | Environmental Protection Agency |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
U.S. Environmental Protection Agency

Argued and Submitted August 8, 2022
Anchorage, Alaska

Before:  S.R. THOMAS, McKEOWN, and CLIFTON, Circuit Judges.

Kern Oil & Refining Co. ("Kern Oil") petitions for review of a final order of

the U.S. Environmental Protection Agency ("EPA"), which granted Kern Oil an

exemption from the requirements of the Clean Air Act's Renewable Fuel Standard

("RFS") program for the 2017 compliance year.  The EPA had the authority to

---

[*]        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

grant Kern Oil an exemption from the RFS program under 42 U.S.C.
§ 7545(o)(9)(B). *See also* 40 C.F.R. § 80.1441(e)(2). We have jurisdiction over
this timely petition for review under 42 U.S.C. § 7607(b)(1). "Because the [Clean
Air Act] does not specify a standard of review, we apply the general standard of
review for agency actions set forth in the [Administrative Procedure Act ("APA")],
5 U.S.C. §§ 701–06." *Sierra Club v. U.S. EPA*, 671 F.3d 955, 961 (9th Cir. 2012)
(cleaned up). Under the APA, this Court upholds agency action unless it is
"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with
law." 5 U.S.C. § 706(2)(A).

We grant in part and deny in part the petition for review, and remand to the
EPA for further proceedings consistent with this disposition. Because the parties
are familiar with the factual and procedural history of this case, we need not
recount it here.

I

Section 7545(o)(9)(B)'s allowance for an "exemption" from the RFS
program does not require the EPA to fully refund the costs that a refinery incurs
when it chooses to comply with its obligations under the RFS program before it
receives the "exemption." *See* 42 U.S.C. § 7545(o)(9)(B)(i). Kern Oil claims that
the EPA must (1) swap out all of the *expired* tradeable credits that Kern Oil had

2

used to show RFS compliance—called Renewable Identification Numbers ("RINs")—for unexpired, most-recent-vintage-year RINs, and (2) issue Kern Oil enough new RINs to offset the amount by which its *unexpired* RINs depreciated between the time when they were acquired and when the EPA later refunded them. We "first . . . employ[] traditional tools of statutory interpretation" to determine whether Congress expressed "an intention on th[is] precise question." *United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1237 (9th Cir. 2005) (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)).

## II

The RFS statute is ambiguous as to the remedy that the EPA must extend to a small refinery that petitions for and receives an "exemption" after it has already fulfilled its annual obligations under the RFS program. Neither the statute nor its implementing regulations define an "exemption." *See* 42 U.S.C. § 7545(o)(1); 40 C.F.R. § 80.1401. And conventional definitions of "exemption" as "[f]reedom from a duty, liability, or other requirement," *Exemption*, *Black's Law Dictionary* (11th ed. 2019), take us only so far, as they do not address what—if any—affirmative steps a party must take to *actualize* an "exemption" when the recipient initially acts as if it were not exempt.

The surrounding language does not make Congress's intent regarding this "precise question" any clearer. Section 7545(o)(9)(B)(i) speaks specifically to "an extension of the exemption under subparagraph (A)," but all "exemption[s]" under § 7545(o)(9)(A) were granted prospectively, and thus were self-actualizing, *see* 42 U.S.C. § 7545(o)(9)(A)(i), (ii); recipient small refineries reaped the benefits of their subparagraph (A) "exemptions" by never complying with the RFS program at all, and without the need for any separate action from the EPA. Moreover, while the fact that small refineries may receive a subparagraph (B) exemption only for the reason of "disproportionate economic impact" suggests that the EPA is obligated to provide a post-compliance exemption recipient a remedy that offsets *some* compliance costs, *see id.* § 7545(o)(9)(B)(i), that language does not speak clearly to the nature or the extent of the remedy that the EPA must provide. Finally, that subparagraph (B) allows a small refinery to petition the EPA for an exemption "at any time," *see id.*, does not *answer* the question of what exact remedy the EPA must provide a refinery that receives an exemption after it has already complied so much as it raises that question in the first place.

### III

The level of deference that we afford an agency's interpretation of an ambiguous statute depends on the manner and context in which it provides the

4

interpretation. *See Sierra Club*, 671 F.3d at 961–63. Under the standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the agency's "interpretation is 'entitled not to deference but to a lesser 'respect' based on the persuasiveness of the agency decision.'" *Nat. Res. Def. Council, Inc. v. Nat'l Marine Fisheries Serv.*, 421 F.3d 872, 877 (9th Cir. 2005) (quoting *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1067 (9th Cir. 2003)).

Because the RFS statute is ambiguous as to the post-compliance "remedy" that the EPA must provide, we next consider whether the EPA's default remedy reflects a persuasive reading of the RFS statute. *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 832 (9th Cir. 2012) (identifying consistency with other pronouncements, validity of reasoning, and thoroughness of consideration as factors contributing to the persuasiveness of an agency's interpretation).

The EPA's default post-compliance remedy—refunding all of the unexpired RINs that the exemption recipient previously used to show RFS compliance—is persuasive. As the agency tasked by Congress with creating and administering the RIN system, the EPA has convincingly explained how the sorts of large-scale and unpredictable infusions of "swapped" RINs that would occur under Kern Oil's proposed alternative remedy would further disrupt the already-volatile RIN market on which the RFS program depends. *See* 42 U.S.C. § 7545(o)(2), (5). By

5

mechanically refunding unexpired RINs that are linked to actual units of renewable fuel production, the EPA can minimize those disruptions while still affording post-compliance exemption recipients some form of economic relief.

The EPA's reasons for not adopting the constituent elements of Kern Oil's preferred remedy are also persuasive. First, as to the swapping of *expired* RINs, post-compliance exemption petitioners are on notice that certain types of RINs will have expired, by operation of law, if they seek an exemption after the RFS program's annual compliance deadline has passed. *See* 42 U.S.C. § 7545(o)(5)(C); 40 C.F.R. §§ 80.1427(a)(6)(i), 80.1428(c). Moreover, the statute and regulations afford petitioners various avenues to avoid the irredeemable costs arising from expired RINs. *See, e.g.*, 42 U.S.C. § 7545(o)(5)(D); 40 C.F.R. § 80.1427(b) (allowing refineries to "carry forward" a compliance deficit and thus not use any RINs in years for which they seek exemptions); 40 C.F.R. §§ 80.1427(a)(6)(i), 80.1428(c) (indicating a refinery can avoid the expiring RINs problem by using only newer RINs to show compliance). Second, regarding compensation for the depreciation in value of *unexpired* RINs, the record suggests that refineries incur these depreciation costs regardless of whether the exemption is granted pre- or post-compliance; thus, refineries are no worse off under the default remedy. The

EPA has also explained persuasively that it would be prohibitively difficult to calculate these depreciation costs on a case-by-case basis.

Finally, the EPA's decision to issue a unique form of relief to one set of post-compliance exemption recipients does not undermine the persuasiveness of the default remedy that it has extended in all other cases. *See Producers of Renewables United for Integrity Truth & Transparency v. EPA*, No. 19-9532, 2022 WL 538185, at *2–3 (10th Cir. Feb. 23 2022) (unpublished order) (summarizing the circumstances of this decision). Unlike here, failure to depart from the EPA's default remedy as to the petitions at issue in *Producers of Renewables* would have resulted in the refineries' receiving no economic benefit from their exemptions at all, since the EPA's initial erroneous decision and subsequent protracted litigation meant that *all* of the refineries' RINs would have been expired (and worthless) by the time they could be "returned." *See id.* Additionally, the EPA in that case considered the impact that "swapping" RINs would have on the credit market, but determined that the number of RINs involved in that specific action would be too small to have any meaningful adverse effect. *See id.* at *5–7.

IV

Because the EPA's default remedy reflects a persuasive reading of the RFS statute, the only remaining question is whether the EPA erred by declining to

7

depart from that default remedy under the particular circumstances of this case. Here, the EPA waited 238 days to act on Kern Oil's small refinery exemption ("SRE") petition—148 days longer than the 90-day statutory deadline. *See* 42 U.S.C. § 7545(o)(9)(B)(iii). The parties agree that the RINs that the EPA eventually returned to Kern Oil would have been worth more had they been returned within 90 days. Kern Oil argues that the EPA erred by failing to compensate it for that further loss in value.

The EPA does not meaningfully dispute that the 90-day requirement in § 7545(o)(9)(B)(iii) imposes a mandatory deadline by which the agency must issue its default post-compliance remedy. Its main defense for its untimely action—that, under the RFS statute, it is not obligated to provide any affirmative remedy at all to post-compliance SRE recipients—is entirely beside the point. Now that the EPA has opted to mechanically apply a default remedy, it must either extend that remedy or provide a reasoned explanation for withholding it. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009). And while the volatile nature of RIN prices might well mean that not every late-issued default remedy will leave an SRE recipient worse off, the record indicates that Kern Oil was not so lucky: By the EPA's own estimates, Kern Oil's RINs lost value as a result of the agency's delay.

The EPA has the authority under the RFS statute to remedy this injury via a tailored RIN replacement order, authority that the agency has exercised before when its own legal errors have deprived SRE recipients of a benefit that they otherwise would have received under the EPA's default remedy. *See Producers of Renewable*s, 2022 WL 538185, at \*2–3; *see also* 42 U.S.C. § 7545(o)(5), (9)(B). Therefore, we grant Kern Oil's petition in part and remand to the EPA with instructions to issue a remedy order that compensates Kern Oil for the loss in value that its unexpired RINs[1] experienced between the time when the EPA should have acted on Kern Oil's SRE petition in October 2018 and when it ultimately granted the petition in March 2019. We do not prejudge the outcome of this examination and remand the issue without prejudice to either party. In light of the EPA's prior delays in this matter, we instruct the EPA to issue its new decision within 90 days of the filing of this disposition.

**PETITION GRANTED in part, DENIED in part, REMANDED.** Each party shall bear its own costs.

---

[1] Consistent with our prior discussion, the EPA on remand need not tailor its remedy to compensate Kern Oil for any loss in value associated with the expired 2016 RINs.

9