**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MULTISTAR INDUSTRIES, INC.,

    Defendant - Appellant.

No. 23-3765

D.C. No.
2:21-cv-00262-TOR

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted November 20, 2024
Seattle, Washington

Before: McKEOWN, GOULD, and H.A. THOMAS, Circuit Judges.

This appeal involves the United States' ("the Government's") enforcement

of Section 112(r) of the Clean Air Act ("CAA") and the Environmental Protection

Agency's ("EPA's") implementing regulations (the "Risk Management Program"),

and the Emergency Planning and Community Right-to-Know Act ("EPCRA")

against Multistar Industries, Inc. ("Multistar") for storing railroad cars containing

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

trimethylamine ("TMA"), a regulated hazardous substance, without following the required safety and notification measures to prevent and reduce risks from accidental releases. The district court ruled on summary judgment that Multistar violated several provisions of the Risk Management Program and EPCRA, and that Multistar did not qualify for the Risk Management Program or EPCRA's similarly worded transportation exemptions such that it could avoid liability. In a bench trial, the district court imposed a civil penalty of $850,000. Multistar now appeals the district court's order on cross-motions for summary judgment and its civil penalty determination, arguing that Multistar is exempt from liability under the Risk Management Program and EPCRA and that the district court abused its discretion in calculating its penalty.

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo*. *Los Padres ForestWatch v. United States Forest Serv.*, 25 F.4th 649, 654 (9th Cir. 2022). Given no contrary language in the statutes, we review for abuse of discretion a district court's determination of penalties under EPCRA and the CAA, as we do regarding other environmental statutes. *See Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 1001 (9th Cir. 2000). We affirm.

Section 112(r) of the CAA, 42. U.S.C. § 7412(r), imposes duties on the owners or operators of "stationary sources" whose processes involve more than a

threshold quantity of a regulated substance.  Congress defined "stationary source" under Section 112(r) as follows:

> any buildings, structures, equipment, installations or substance emitting stationary activities (i) which belong to the same industrial group, (ii) which are located on one or more contiguous properties, (iii) which are under the control of the same person … and (iv) from which an accidental release may occur."  42 U.S.C. § 7412(r)(2)(C).

EPA's Risk Management Program clarified that "[t]he term stationary source does not apply to transportation, including storage incident to transportation, of any regulated substance."  40 C.F.R. § 68.3.

Section 312 of EPCRA, 42 U.S.C. § 11022, and its implementing regulations at 40 C.F.R. Part 370 impose duties on owners and operators of facilities that handle hazardous materials.  The statute defines "facility" as "all buildings, equipment, structures, and other stationary items" under common control at a particular location.  42 U.S.C. § 11049(4).  Like the CAA's Risk Management Program, EPCRA by its own terms "does not apply to the transportation, including the storage incident to such transportation, of any substance or chemical subject to the requirements of this chapter."  42 U.S.C. § 11047.

Storage was the *principal* purpose of Multistar's holding of TMA; therefore, following the parties' own arguments, that storage was not "subordinate" or "incident to" transportation.  And, while EPA has not drawn a bright line

indicating the length of time required for a stationary transportation container to fall out of "transportation," containers that sit stationary for more than a month plainly are not in transportation. None of Multistar's TMA-storing rail cars were under active shipping papers—suggesting that even those containers that were stationary for even shorter periods of time were not in transportation. (The Government does not request deference to its use of active shipping papers as a "guidepost" in EPCRA administration. We look to this history of use "for guidance," but we "do not defer to the agency." *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024); *see also Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2262 (2024); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).)

This leaves undetermined the status under the CAA of briefly stationary containers. The "standard tools of interpretation" leave some ambiguity in the CAA and Risk Management Program as they pertain to briefly stationary transportation containers and thus do not fully resolve the parties' interpretive dispute. *League of California Cities v. F.C.C.*, 118 F.4th 995, 1012–13 (9th Cir. 2024). We therefore turn to the agency's interpretations of the Risk Management Program regulations to resolve this narrow issue.

EPA's "motive-power" interpretation of the Risk Management Program's transportation exemption states that a container is in transportation and eligible for the exemption "as long as it is connected to the motive power that delivered it to

the site." 63 Fed. Reg. 640, 643 (Jan. 6, 1998). We are persuaded by this interpretation because it provides a "reasonable" approach for determining when a railroad car that is only stationary temporarily is in "transportation" under the Risk Management Program; it is based on the agency's "substantive expertise" given that Congress directed EPA to regulate stationary sources; and it "reflects the agency's fair and considered judgment, and represents the agency's authoritative or official position" because EPA included the interpretation in the preamble to the regulation in the Federal Register. *See League of California Cities*, 118 F.4th at 1013 (cleaned up) (quoting *Kisor v. Wilkie*, 588 U.S. 558, 574–79 (2019)). Because the TMA-containing railroad cars were disconnected from motive power while stored on Multistar's private tracks, we conclude that even those rail cars that were stationary for relatively short periods of time do not qualify for the Risk Management Program's transportation exemption.

The district court did not abuse its discretion when imposing its $850,000 penalty. The district court correctly estimated the maximum penalty based on the number of separate violations that Multistar committed, not the number of days that Multistar was out of compliance. 42 U.S.C. § 7413(b) (civil penalties to be calculated "per day *for each violation*") (emphasis added); 42 U.S.C. 11045(c)(1), (3) (civil penalties to be calculated "for each . . . violation," with each day of non-compliance "constitut[ing] a separate violation"). *See also Borden Ranch*

*Partnership v. U.S. Army Corps of Engineers*, 261 F.3d 810, 817 (9th Cir. 2001), *aff'd*, 537 U.S. 99 (2002) (construing similar language as requiring a per-violation, not per-day, calculation). The district court considered all the required factors, and the amount of the penalty is well below the maximum penalty.

**AFFIRMED.**