## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANTHONY BENNETT,
          Appellant,

v.

OFFICE OF PERSONNEL
   MANAGEMENT,
          Agency.

DOCKET NUMBER
SF-0842-23-0375-I-1

DATE: February 24, 2025

# THIS ORDER IS NONPRECEDENTIAL[*]

<u>Anthony Bennett</u>, Marina, California, pro se.

<u>Jo Bell</u> and <u>Carla Robinson</u>, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed a reconsideration decision by the Office of Personnel Management (OPM) denying his application for a deferred annuity under the Federal Employees' Retirement System (FERS). For the reasons discussed below, we

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was a Federal civilian employee from August 5, 1985, to January 19, 1996, and again from June 3, 2001, to February 20, 2008. Initial Appeal File (IAF), Tab 7 at 5, 14. He separated from his most recent position with the Department of Veterans Affairs in February 2008. *Id.* at 14, 32. On September 8, 2022, the appellant submitted an application for a deferred or postponed retirement annuity. *Id.* at 14-17. He claimed eligibility based on reaching a FERS Minimum Retirement Age with 10 years of creditable service, which OPM terms "MRA+10" eligibility or an "MRA+10" annuity. *Id*. at 5, 18.

OPM issued a reconsideration decision denying the appellant's application on the basis that he "did not have more than 10 years of creditable civilian service." *Id.* at 5. OPM explained that because the appellant took a refund for his first period of civilian service (August 1985 to January 1996) and because he made no FERS deposits for his periods of active military service, his only creditable FERS service was from June 2001 to February 2008, which totaled 6 years, 8 months, and 18 days of creditable service. *Id.* at 7. OPM stated that, based on this creditable service, he would become eligible for a deferred annuity at 62 years of age. *Id.*

The appellant then filed an appeal with the regional office challenging OPM's reconsideration decision. IAF, Tab 1. On his appeal form, the appellant maintained that he satisfied the eligibility requirements for an MRA+10 annuity and that his 1996 refund did not forfeit his later annuity eligibility. *Id.* at 2, 4. During the proceedings below, OPM submitted the appellant's 1996 FERS Application for Refund of Retirement Deductions, Standard Form 3106 (SF-3106). IAF, Tab 7 at 26. The SF-3106 lists periods of civilian employment

from August 1985 through January 1996, and contains a certification signed by the appellant stating that he understood that receiving a refund "forfeit[ed] . . . any retirement rights" for the period the refund covered. *Id.*

The administrative judge issued an initial decision, which agreed with OPM's finding that the "appellant's aggregate creditable service under FERS[,] totaling approximately six years, eight months, and 18 days, is not sufficient to meet the 10 years of service requirement." IAF, Tab 11, Initial Decision (ID) 10-11. The administrative judge therefore found that the appellant did not establish that he was entitled to a deferred MRA+10 annuity, and he affirmed OPM's reconsideration decision. ID at 11.

The appellant has filed a timely petition for review. Petition for Review (PFR) File, Tab 1. On review, he realleges that he only received a partial refund of his retirement deductions in 1996. *Id.* at 4, 6, 8; IAF, Tab 10 at 3. He argues that because he requested the refund at the end of his November 1994 to January 1996 period of civilian employment, the refund covered only that time period. PFR File, Tab 1 at 4, 6, 8. With his petition for review, the appellant provides two Standard Form 50s (SF-50s) that are not in the record below. *Id.* at 5, 7. The agency has submitted a pro forma response to the petition for review, and the appellant has replied. PFR File, Tabs 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>OPM and the administrative judge correctly determined that the appellant received a refund of his FERS contributions for the period from August 1985 through January 1996.</u>

Both OPM's reconsideration decision and the administrative judge's initial decision explained that the appellant's 1996 refund of his FERS contributions from August 5, 1985, through January 19, 1996, rendered that period of service noncreditable toward the MRA+10 annuity benefit. ID at 6-8; IAF, Tab 7 at 7. On review, the appellant argues that he requested only a partial refund of his

FERS contributions, covering the period from November 1994 to January 1996. PFR File, Tab 1 at 4, 6, 8.

An appellant who files an appeal from an OPM reconsideration decision involving retirement benefits has the burden of proving, by preponderant evidence, that he is entitled to the benefits he seeks. *Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 140-41 (Fed. Cir. 1986); 5 C.F.R. § 1201.56(b)(2)(ii). Here, the appellant applied for an MRA+10 annuity. IAF, Tab 7 at 18. The minimum retirement age for an individual born during 1964, like the appellant, is 56 years old. *Id.* at 14; 5 U.S.C. §§ 8412(h)(1)(c), 8413(b)(1).

The appellant was 58 years old when he applied for a deferred annuity in 2022. IAF, Tab 7 at 14, 17. Therefore, he met the age requirement for the benefit he sought. However, he also needed 10 years of creditable service. *Id.* at 5-7; *see* 5 U.S.C. § 8413(b)(1). The appellant paid FERS contributions while employed from August 1985 to January 1996. IAF, Tab 7 at 39-44. He sought a refund in January 1996, a few days after this service ended. *Id.* at 26. Assuming he had no breaks in this service, it totaled approximately 10 years and 5 months. Added together with his later service, the appellant exceeded the 10-year requirement.

However, the appellant received a refund of his FERS retirement contributions in 1996. *Id.* A refund of an employee's FERS contributions generally voids all annuity rights for the period of service covered by the refund. 5 U.S.C. § 8424(a); *Pagum v. Office of Personnel Management*, 66 M.S.P.R. 599, 601 (1995). Although the appellant later had a second period of service from June 2001 to February 2008, that service only totaled 6 years, 8 months, and 18 days. IAF, Tab 7 at 7, 15, 32.

We find no merit in the appellant's assertion on review that the 1996 refund covered only the "period of federal service from November 1994 and January 1996," thereby bringing his total creditable service to 15 years and

11 months. PFR File, Tab 1 at 4. In support of this claim, the appellant submits two SF-50s for the first time on review. *Id.* at 5-7. The Board's regulations provide that it will grant a petition for review when, among other reasons, new and material evidence is available that, despite the appellant's due diligence, was not available when the record closed. *Ellis v. U.S. Postal Service*, 121 M.S.P.R. 570, ¶ 6 (2014); 5 C.F.R. § 1201.115(d). Evidence is "new" when the information contained in the documents, not just the documents themselves, were unavailable despite the appellant's due diligence when the record closed. 5 C.F.R. § 1201.115(d). Evidence is "material" when it is of sufficient weight to warrant an outcome different from that of the initial decision. *Ellis*, 121 M.S.P.R. 570, ¶ 6; 5 C.F.R. § 1201.115(a)(1).

The SF-50s offered by the appellant on review are neither new nor material. The two SF-50s are dated January 1996 and April 1994, respectively, meaning that neither the documents themselves nor the information they contain are novel. PFR File, Tab 1 at 5, 7. The appellant also did not attempt to show due diligence by explaining why the SF-50s could not have been supplied earlier. Even if these SF-50s could be considered new, they are not material. The January 1996 SF-50 states that, at the time of his separation, the appellant "was counseled on entitlement to deferred annuity/refund of retirement deductions." *Id.* at 7. However, the appellant does not explain what this counseling contained or its relevance to the refund he received later that year. As to the April 1994 SF-50, the appellant argues that this SF-50 reflects that his employment between August 1985 and November 1994 was in a permanent position, as compared to his later probationary service between November 1994 and January 1996. *Id.* at 4-6. However, the appellant does not explain why these two periods are legally distinct for purposes of receiving a refund. Neither the FERS statute nor OPM regulations suggest that probationary versus permanent service are distinguishable for purposes of FERS refunds. *See* 5 U.S.C. § 8424(a); 5 C.F.R.

§ 842.308(b)(2). Accordingly, neither SF-50 can be said to warrant an outcome different from that ordered by the administrative judge.

The record evidence suggests that the 1996 refund covered the period from August 1985 to January 1996. OPM submitted a calculation of the appellant's contributions and interest earned from the period of August 1985 to January 1996, which totaled $2,602.78. IAF, Tab 7 at 28. That calculation matches the payment amount that OPM stated on a March 6, 1996 notice to the appellant advising him of the tax consequences of his refund election. *Id.* at 30. For the same reason, the appellant's Individual Retirement Record, which states that, after withholding $180.00 for taxes, the appellant's refund payment amount would be $2,422.78, also contradicts the appellant's assertion that he only received a partial refund. *Id.* at 33.

Further, OPM's policy for many years has been to pay all of an employee's retirement deductions, plus interest. *Conway v. Office of Personnel Management*, 59 M.S.P.R. 405, 409-11 (1993). Consistent with that policy, the SF-3106 required the appellant to list all of his Federal Service, and he did so. IAF, Tab 7 at 26; *see Conway*, 59 M.S.P.R. at 410-11 & n.2 (concluding that an appellant's belief that he would receive a refund for only the portion of service that he listed on an SF-3106 was not reasonable). Because the appellant did not establish by preponderant evidence that he received only a partial refund of his FERS retirement deductions, we agree with the administrative judge's determination that the refund covered the period from August 1985 to January 1996. ID at 10-11.

The administrative judge observed that the appellant had identified approximately 5 years of military service. ID at 2-3; IAF, Tab 7 at 14. However, as the administrative judge observed, the appellant did not claim he made a FERS deposit for this service. ID at 2; IAF, Tab 7 at 5, 14, 24, 26. The appellant did not argue otherwise below or claim he made a military deposit on review. Therefore, we will not disturb this conclusion.

<u>We remand this appeal for further consideration of whether the appellant is entitled to credit for his refunded FERS covered service under 5 U.S.C. § 8424(a).</u>

The administrative judge was not persuaded by the appellant's argument that, despite receiving a refund of his FERS contributions for his service between August 1985 and January 1996, he retained FERS credit for this period for purposes of determining his eligibility for a deferred annuity. IAF, Tab 1 at 4, 13; ID at 8-9. The appellant has not reraised this argument on review. Nonetheless, we revisit this issue because the administrative judge's finding was central to his determination that the appellant was not eligible for an MRA+10 annuity.

On October 28, 2009, President Obama signed into law the National Defense Authorization Act for Fiscal Year 2010, Pub. L. No. 111-84, 123 Stat. 2190 (NDAA). Among other FERS provisions, the NDAA amended 5 U.S.C. §§ 8422 and 8424. Pub. L. No. 111-84, § 1904, 123 Stat. at 2616-17. As the administrative judge observed, the NDAA amended 5 U.S.C. § 8422(i)(1) to permit employees to regain service credit for refunded service by making a deposit equaling the refund received plus interest for purposes of calculating their annuities. Pub. L. No. 111-84, § 1904(a), 123 Stat. at 2616. Further, the NDAA amended 5 U.S.C. § 8424(a) to provide that individuals who previously received a FERS refund and were later reemployed in a position covered by FERS would receive credit for their prior service for purposes of determining their eligibility for an annuity. Pub. L. No. 111-84, § 1904(b)(4), 123 Stat. at 2617. The prior version of § 8424(a) stated that "payment of a lump-sum credit . . . voids all annuity rights . . . based on the service on which the lump-sum credit is based." 5 U.S.C. § 8424(a) (2009). The current version, as updated by the NDAA, adds that the voiding of annuity rights lasts only "until the employee . . . is reemployed in the service subject to [FERS]." Pub. L. No. 111-84, § 1904(b)(4), 123 Stat. at 2617 (codified at 5 U.S.C. § 8424(a)).

To the extent that the administrative judge found that any entitlement that the appellant might have to service credit for periods of refunded service arose under 5 U.S.C. § 8422(i)(1), his reliance on this provision was misplaced. Section 8422(i)(1) concerns the right to make a redeposit, which the appellant has not claimed he attempted to do. Therefore, it is not applicable here. Rather, 5 U.S.C. § 8424(a) contains the relevant statutory language. As detailed above, that provision now provides that certain individuals reemployed under FERS will receive credit for refunded service without making a deposit.

The administrative judge found that NDAA § 1904, which enacted both changes discussed above, only applies to individuals employed under FERS on or after October 28, 2009. ID at 9. In reaching this conclusion, he deferred to OPM's guidance stating that "[t]he provisions of section 1904 of the NDAA only apply to employees covered under FERS on or after October 28, 2009, and only affect annuity benefits based on a separation from FERS coverage on or after October 28, 2009." OPM, Benefits Administration Letter, No. 11-103, at 1 (Feb. 25, 2011), https://www.opm.gov/retirement-center/publications-forms/benefits-administration-letters/2011/11-103.pdf (last visited Feb. 21, 2025); ID at 8-9. The same limitation on service credit for refunded service can be found in OPM's regulations. 5 C.F.R. § 843.202(b)(1). However, OPM does not explain the basis for limiting the service credit to individuals who were separated from Federal employment on or after October 28, 2009, either in its regulation or in its Benefits Administration Letter. *See* Phased Retirement, 79 Fed. Reg. 46608-01, 46632 (Aug. 8, 2014) (setting forth the final rule that was codified as 5 C.F.R. § 843.202(b)); Phased Retirement, 78 Fed. Reg. 33912-01, 33919, 33933 (June 5, 2013) (setting forth the proposed rule that was codified as 5 C.F.R. § 843.202(b), and explaining that the revision was made "to reflect the change in law affecting the consequences of employee refunds").

After the administrative judge issued the initial decision, the U.S. Supreme Court issued its opinion in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369

(2024). In *Loper Bright*, the Supreme Court concluded that courts may not defer to agency rules and regulations interpreting statutes. 603 U.S. at 412-13. Instead, they must exercise "independent judgment." *Id.* at 412. An implementing agency's legal interpretation of a statute concerning an area within the agency's expertise may be persuasive to a court based on a variety of factors, including if it was issued contemporaneously with the statute and the agency has consistently followed the same interpretation. *Id.* at 385-88, 394, 402 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 137-40 (1944) (explaining that the weight a court will give the interpretation of an official of the statute he is charged with enforcing "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control")).

In addition to the question of the weight to give OPM's temporal limit on the NDAA's amendment to 5 U.S.C. § 8424(a), statutory principles regarding retroactivity are at play here. *See Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 31-33 (applying the Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), to determine whether to give a statutory amendment retroactive effect), *aff'd*, No. 22-1967 (Fed. Cir. July 7, 2023). Here, 5 U.S.C. § 8424(a) is silent as to whether it applies to events occurring before its enactment. NDAA § 1904, which enacted the amendment to 5 U.S.C. § 8424(a), is also silent. Section 1904 was one of five provisions in subtitle A of title XIX of the NDAA. Three of those provisions provided that they were effective "on or after the date of enactment" which, as mentioned above, was October 28, 2009. Pub. L. No. 111-84, §§ 1901(c), 1902(b), 1903(b), 123 Stat. at 2615-16. In the remaining provision, Congress specified the dates of qualifying service. Pub. L. No. 111-84, § 1905(b), 123 Stat. at 2617-18. In sum, Congress's silence as to the scope of its amendment to 5 U.S.C. § 8424(a), its differing treatment of other provisions in title XIX of subtitle A of the NDAA, and the Court's decision in

*Loper Bright* raise concerns regarding the weight the Board should accord to OPM's determination to exclude the appellant from the benefit of receiving service credit for his refunded FERS service.  Because the record is not developed on this issue, we remand the case to the regional office for a determination.  On remand, the administrative judge should advise the parties of the standards applicable to this matter under *Landgraf* and *Loper Bright* and provide the parties with an opportunity to present relevant evidence and argument.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.  The administrative judge may adopt his prior finding that the appellant received a refund of his FERS contributions for the period from August 1985 to January 1996 in the remand initial decision.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.